## No. 764.

JOHN A. HUNTER ET AL. VS. R. T. BUCKNER & BROTHER ET AL.

If the real owner of property allows it to stand recorded in the name of another, by a title translative of property, he puts it in the power of that other to create a valid mortgage on it.

APPEAL from the Seventeenth Judicial District Court, parish of Red River. *Pierson, J.*

*L. B. Watkins,* for plaintiffs and appellants.

*Land & Taylor* and *William H. Wise,* for defendants.

The opinion of the court was delivered by

MANNING, C. J. John A. Hunter, Virgil A. Stewart, and William B. Stewart allege that the first two purchased the Wray and Boland plantation, under a bond for title, from W. E. Wamsley, on the fourth of January, 1871, the price being seven thousand five hundred dollars, which bond erroneously recites that $3983 19 were paid in cash, the residue being provided for by the execution of three notes of equal sums, payable respectively on the tenth of November, 1871, and the same day of the two following years, and that this sum, thus represented to have been paid cash, was not in fact thus paid, but as follows:

On the same day that plaintiffs executed the notes to Wamsley, a conveyance of the Loggy Bayou plantation was made to him by William B. Stewart, Alice M. Stewart, and Martha S. Caldwell, for the expressed consideration of $3519 08 cash, and that this sum was not in fact paid in cash, but in reality was a part of the slightly larger sum mentioned as cash paid in the bond for title of the Wray and Boland plantation.

The petitioners further allege that in August, 1873, Wamsley instituted suit upon the three notes above mentioned, praying for judgment for their aggregate amount, and for the enforcement of his vendor's privilege, and a judgment with a restraining condition as to execution was rendered against them, as will appear by that case, now before us on appeal.

But meanwhile, viz., on third of April, 1873, Wamsley had executed a mortgage upon the Loggy Bayou tract to R. T. Buckner & Brother to secure the payment of his debt to them, amounting to $2197 29, and they had obtained executory process thereon, and that tract was advertised for sale on February 17, 1877. Besides, Wamsley had never paid for the Wray and Boland tract, and his vendors foreclosed their mortgage upon it, and it was sold on the second of December, 1876, for a sum insufficient to pay their mortgage, and Hunter and Virgil Stewart were consequently evicted.

The plaintiffs allege that Wamsley's failure to lift this mortgage is a breach of the condition of his bond, and operates a revocation of the sale of the Wray and Boland tract to Hunter and Virgil Stewart, and entitles the plaintiffs to the payment of the penalty of the bond, and that the revocation and resolution of the sale of the Wray and Boland tract entitles them to recover back the Loggy Bayou tract free from every incumbrance that Wamsley may have placed upon it, and particularly from the Buckner mortgage. They then pray the annulment of that mortgage, and its erasure from the mortgage records, and for the revocation of the sale of the Wray and Boland tract through the enforcement of the resolutory condition, and a decree declaring void any sale that may take place under the Buckner mortgage.

An exception was filed by the Buckners.

First—That Hunter and Virgil Stewart have no interest in the suit to annul the sale of the Loggy Bayou tract, but that such suit should be by all the vendors of that tract, and not by one alone.

Second—That no legal cause of action has been set forth in the petition against the Buckners, inasmuch as they are third parties, who were ignorant of, and are unaffected by, any latent equities between others.

This exception was referred to the merits, and there does not appear to have been any other objection to either the misjoinder or nonjoinder of parties.

The Buckners answered by a general denial, with the allegation that they are holders of a special mortgage upon the Loggy Bayou tract, acquired by them in good faith and in ignorance of any secret bargains between their mortgageor, Wamsley, and his vendors or others, and believing, and having a right to believe, that Wamsley was the legal owner of the mortgaged premises.

Wamsley's administrator, answering for the succession, pleaded the judgment in the other suit upon the notes as *res adjudicata*. There was judgment for the defendants.

The plaintiffs' documentary evidence included the bond recited in the petition, and the deed to Wamsley of the Loggy Bayou tract. The first is an instrument by which Wamsley binds himself to Hunter and Virgil

Stewart in the penal sum of seven thousand five hundred dollars, and is dated January 4, 1871. The condition is that, whereas Wamsley has that day sold and delivered the Wray and Boland tract for seven thousand five hundred dollars (the vendees not mentioned), of which sum $3983 19 is paid cash in hand and receipt acknowledged, and three notes of equal amounts are given for the residue by Hunter and Virgil Stewart, with W. B. Stewart as security, now if the two makers of the notes shall pay them, then Wamsley shall make or cause to be made a good title to this land to those makers. No other document was signed by these parties. The notes were never paid, and a formal act of sale was never executed.

The deed from William B. Stewart, Alice M. Stewart, and Martha S Caldwell to Wamsley of the Loggy Bayou tract recites that the consideration, viz.: $3519 08, was received, and is acknowledged before the signing and delivery of the deed, and the title is warranted. This instrument has no date, and is not signed by Wamsley, but neither of these omissions is noticed or objected to by counsel on either side. Appended to this deed is the affidavit of one of the subscribing witnesses to the genuineness of the several signatures, which was made before A. J. Twitchell, recorder, on the fourth of August, 1871. The plaintiff did not offer any writings or certificates upon the back of the deed.

The defendants offered the Buckner mortgage, and the indorsement that it was recorded on April 14, 1873; also, the "certificate of the recorder of the date of registry" of the Loggy Bayou sale, thus supplying that writing or indorsement which plaintiff had not included in his offering; that is to say, the note of plaintiffs' evidence shews that he offered the deed to Wamsley, and the note of defendants' evidence shows that he offered the certificate upon that deed; and the clerk states this latter is designated No. 2. But there is no document No. 2 in the transcript. The certificate which the defendants offered is copied, however, in the plaintiffs' evidence immediately after the deed, and is necessarily the one offered by them. It is as follows:

"I hereby certify the above and foregoing to be a true and correct copy of the original, duly of record in my office book A conveyances, folios 18 and 19. Given under my hand and seal of office this fifth day of September, 1876;" and then follows the recorder's name.

The deed of the Loggy Bayou place has then no date. Its execution was proved before the recorder August 4, 1871. There is no certificate of the date it was recorded; but on the fifth of September, 1876, the recorder makes a copy of it, and certifies that it is of record in a certain book, on a certain page. When was it recorded? The defendants say, certainly before August 7, 1871, because the bond of Wamsley was recorded on that day in book A, page 41, and the certificate shows the

deed to Wamsley was recorded in book A, page 18, *ergo* the deed was recorded before the bond, since it is on an earlier page. The misfortune of this demonstration is that there are two books A, and the deed was recorded in page 18 of the Conveyance Book, while the bond is certified to be recorded on page 41 of the Mortgage Book.

The whole case turns upon this. This minute elaboration is only excused by the importance of ascertaining the date of the registry. We are enabled to ascertain that it was before another given date thus.

The public acts of the Legislature shew that the parish of Red River was created March 2, 1871. The deed was proven before the recorder August 4 following, and it was recorded on page 18 of the first book of conveyances; and was therefore one of the earliest recorded deeds. Wamsley's title was therefore on record long before his mortgage to Buckner of April, 1873.

We are now enabled to apply the law to this state of facts. Parol testimony was offered to prove that the recitals in the deed and the bond, that certain moneys which were part of the consideration of the one, and the whole of the consideration of the other, were not paid in fact, but that the Loggy Bayou tract was estimated at the sum expressed in the deed, and was exchanged for the Wray and Boland tract of larger value, the difference being represented by the small cash payment and the three notes. The evidence was rejected.

It is of no consequence to the outside world what the contract really was between Wamsley and these parties. The only matter that third persons are concerned with, is to know what Wamsley and his vendors say that the contract is. There was on the public records, and in its proper place, an act of sale by which a title, translative of property, was conveyed to Wamsley of a certain tract of land, the price of which was acknowledged to have been paid in full, and he was in possession of it. He mortgaged that land to a *bona fide* creditor to secure his debt. There is no pretense of fraud, or simulation, or collusion, or bad faith, nor is there any knowledge alleged or brought home to the creditor, of the secret purposes or understandings of these numerous parties, if indeed such existed, and he can not be affected or injured by them.

It was superfluous therefore to hear testimony which could not affect Buckner's mortgage. But we are told that this suit is to enforce the dissolving condition of a sale for non-payment of the price, which being accomplished, the thing sold will revert to the vendors free from all charges created by the vendee.

The resolutory or dissolving condition is implied in all commutative contracts, and its effect is to restore matters to the status that existed at the date of the contract. Civil Code, articles, 2040-41, new numbers 2045-46; Chretien vs. Richardson, 6 Annual 2. So, too, if the price of a con-

tract had not been paid, it would be competent to the parties as between themselves to shew it. Barry vs. Insurance Company, 11 Martin, 630. But these indisputable rules of law neither conflict with, nor do they weaken, that other rule which binds a party to suffer the consequences of his own word or deed, rather than inflict an injury upon an innocent person who has been deceived by him..

It is begging the question therefore to say that this sale must be dissolved for non-payment of the price, since the truth was that it was not paid. The act of sale informed the world it was paid, and the Buckners, acting on that information, gave credit to the owner of the property, and are entitled to enforce their mortgage upon it.

This disposes of the numerous issues which obscure the case, and justifies the judgment of the lower court.

Judgment affirmed.