(40 South. 917.)

No. 15,889.

PELLERIN et al. v. SANDERS, Sheriff, et al.

(Jan. 29, 1906.    Rehearing Denied March 12, 1906.)

1. MORTGAGES — OWNERSHIP OF PROPERTY — CONSENT OF OWNER TO MORTGAGE BY OTHERS.

Plaintiff enjoined the enforcement by executory process of a note which she had executed jointly with two others, which was secured as to payment by special mortgage on certain property in its entirety and of which the makers in the mortgage act declared themselves to be the owners. The grounds of injunction were that the property belonged in its entirety to herself as sole heir of her father and mother; that the co-makers had no right in the succession of her father or mother, and were without right to mortgage the property; that she herself was not bound upon the note as the consideration had not inured to her benefit. That the note and mortgage had been extinguished by payment made by the plaintiff in the executory proceeding, and if any claim he had, it was an unsecured claim for reimbursement for the money expended by him in making the payment; that payment had been illegally demanded of her of payment of the whole note under the executory proceedings whereas she was only bound for one-third if at all.

*Held,* if the plaintiff was the owner in entirety of the property she was at liberty to dispose of it in any form she thought proper, provided third parties were not injured. If the co-makers of the note were not owners of the property, her own property was authorized by her to be mortgaged by them to the extent they did so by permitting them to unite with her in the execution of the mortgage.

2. DESCENT AND DISTRIBUTION—DEBTS—LIABILITY OF HEIRS.

The note declared on was given for money borrowed of a bank to pay a prior note which had been executed by herself and the same parties, jointly with plaintiff's father to enable him to pay a debt of his own, and which note was outstanding at her father's death. Plaintiff accepted his succession unconditionally. If she was his sole heir she acquired all his property but became bound for the whole debt. Under plaintiff's claim as to the legal situation, demand of payment of the whole note was authorized, but even if she had not owed personally the whole debt it would have been authorized for the purpose of a foreclosure of the mortgage.

3. SUBROGATION—PAYMENT OF NOTE SECURED BY MORTGAGE.

Under the circumstances of this case, though the debt due to the bank was satisfied by the plaintiff in the executory proceeding, the note and its accessory mortgage were not extinguished.

(Syllabus by the Court.)

Suit for an injunction by Pauline Pellerin and others against John B. Sanders, as sheriff, and others, to restrain defendants from collecting the amount of certain note by executory process. A judgment for defendants was affirmed by the Court of Appeal, and plaintiffs applied for certiorari or writ of review. Affirmed.

O'Niell & Alpha, for plaintiff. Don. Caffery & Son, for intervener and third opponent. Foster, Milling, Godchaux & Sanders, for respondents Philip. Charles Frank Borah, for respondent Bloch.

## Statement of the Case.

NICHOLLS, J. Jules Bloch held a note executed by Pauline Pellerin (aided and authorized by her husband, Emile Pellerin), Eli Philip, and St. Cyr Philip to their own order, and by them indorsed in blank for the sum of $1,363.65, secured as to payment by special mortgage and vendor's privilege on property described in the notarial act with which the note was identified by paraph of the notary, the said property being referred to as that of the makers of the note.

Bloch procured the note from the Citizens' Bank of Jeanerette through the St. Mary Bank of Franklin.

He obtained executory process on the note, and the sheriff was about to sell the property under the order of seizure and sale, when the proceedings were arrested by an injunction which issued upon the petition of Pauline Pellerin.

The grounds assigned for injunction were:

First. That the seizing creditor, Jules Bloch, was not the owner of the note sued on, and that if he paid the amount claimed to the Bank of Jeanerette he did so without authority or interest, and is not entitled to subrogation of either the note or the mortgage.

Second. That the pretended sale and resale aforesaid were at one and the same time, as one transaction, and created only a special mortgage, and that as the money pretended to have been borrowed did not inure to the separate benefit and advantage of Pauline Pellerin, who was then a married woman, she was not liable.

Third. That the two codefendants in the executory process, Eli Philip and St. Cyr Philip, are adulterous bastards born of Modest Achille during the marriage of the father and mother of the said Pauline Pellerin, and that if the said St. Cyr Philip and said Eli Philip are the children of the said Pauline Pellerin's father they are adulterous bastards, who could not be legitimated nor acknowledged, and who could not inherit any portion of his estate.

Fourth. That the notice to pay, alleged to have been served upon plaintiff, is a demand for the full amount of the debt, instead of

for one-third thereof, and that in no event is the obligation a solidary one against the said Pauline Pellerin.

Fifth. That the said Pauline Pellerin was not served nor was her husband served with a notice of seizure, nor with any notice apprising her of the date, time and place of sale; although a certain writing, purporting to be an advertisement of the sale was handed to her husband at their residence, fully 30 miles from the courthouse, on March 2, 1903, only 19 days prior to the date on which the property was advertised for sale.

In the petition for injunction Mrs. Pellerin claimed the ownership of the entire property and that her action was a petitory action against Eli and St. Cyr Philip. She averred that Bloch got possession of the note on the 9th of February, 1903, the day on which the executory process issued after maturity; that he did so without any right or authority to do so; that he had no interest whatever in paying said note other than his personal interest and motive of aiding Eli and St. Cyr Philip in defrauding her of her property; that if he paid for the note he did so for Eli and St. Cyr Philip, and that if there had been any indebtedness represented (so far as she was concerned) by the note, the same became extinguished and Eli and St. Cyr Philip became indebted to Bloch, and without effect on the described property belonging to her. She averred that Bloch was colluding fraudulently with Eli and St. Cyr Philip to deprive her of the property which was her paraphernal property; that she was entirely illiterate, could not even write her name and was utterly ignorant of business or financial transactions, and that any documents which she had or might have signed in reference to the note or the alleged indebtedness which it purported to represent or of the property pretended to have been mortgaged, or the status or ownership thereof was done in absolute ignorance of fact and in ignorance of the contents of the same.

The prayer of her petition was that an injunction issue directed to the sheriff and Bloch restraining each and both from proceeding further in the execution of the executory proceedings; that they and Eli and St. Cyr Philip be cited; that after due proceedings there be judgment in her favor perpetuating the injunction and recognizing her as the true and lawful owner of the property as her separate paraphernal property and annulling and ordering canceled the pretended mortgage and lien mentioned in the petition of Bloch.

The district court rendered judgment in favor of defendants rejecting the plaintiff's demands and dissolving the injunction sued out by her and at the same time rendered judgment in favor of Bloch on a reconventional demand set up by him against the plaintiff in injunction and the surety on her bond for the sum of $150.

Bloch entered a remittitur on the latter judgment.

The case was appealed to the Court of Appeal. That court affirmed the judgment of the district court and refused a rehearing. The case was then under order of this court brought before it for review.

## Opinion.

It is urged by Mrs. Pellerin, the plaintiff in injunction, that the property seized belongs in its entirety to herself as her separate and paraphernal property. That she inherited part of the property as heir of her mother and part as heir of her father: that Eli and St. Cyr Philip, who joined with her in executing the note and the mortgage upon which the executory process issued claiming to be part owners with her, had no interest whatever and were without right, power, or authority to mortgage it to any extent what-

ever; that they were the adulterous bastard children of her father. If it be assumed that what is here claimed be in fact true, the conclusion which she draws from the situation is not true. If the parties named had in fact no interest in the property and it was in fact hers in its entirety at the time of the execution of the mortgage, there was no legal impediment to her dealing with it in any manner she might think proper as to form so long as she did not injure third parties.

If the property being entirely her own she thought proper to permit others beside herself to join with her in mortgaging it, the latter persons asserting part ownership, such action, though not altering the actual fact, would bind her so far as concerned persons dealing in the premises on the faith of the proceedings as being either an absolute recognition of their declared rights as part owners, or as acting, while dealing with her property to the extent and in the manner and form which they did, with her full authority. If they were not in fact joint owners she certainly clothed them under the circumstances with the right, authority and power to mortgage the property. If, to escape the effect of the mortgage, she were to deny any ownership on the part of those who joined with her in the mortgage, she would be at once successfully confronted with the claim that they were with her consent acting for and in her behalf as owner.

Plaintiff in injunction urges that she was in no manner indebted upon the note held by the bank of Jeanerette; that she derived no benefit from the money borrowed from the bank which the note represented, but we think that claim is without foundation. She is before the court admittedly as the sole heir of her father. After her mother's death she executed jointly with him and with Eli Philip and St. Cyr Philip a promissory note secured as to its payment by a special mortgage upon the property involved in this litigation in its entirety. The consideration of this note was a debt due by the father to one Hayes. At her father's death this note was unpaid and it was in order to obtain the money wherewith to pay it that the note given to the Bank of Jeanerette was executed.

If it be true, as she alleges it to be, that she was the sole legal heir of her father and Eli and St. Cyr Philip inherited nothing, then she, by her unconditional acceptance of his succession, acquired all interest he may have had in the property, but she became bound at the same time for the entire debt.

The demand of Bloch in this proceeding is not a personal judgment against her but for the seizure and sale of the property, mortgages, and the application of the proceeds of the same to the payment finally of a debt of the father which she has joined with him and for his benefit in securing by a special mortgage on the entire property; this debt, as has been stated, she subsequently became bound for in entirety as his sole and unconditional heir.

It is claimed by Mrs. Pellerin that Bloch did not purchase the note but that he paid it; that by paying it the note became extinguished and with the extinguishment of the note the accessory mortgage fell and the only claim which Bloch could have against her would be an unsecured credit for reimbursement as for money advanced for her use and benefit. It is asserted that the bank of Jeanerette did not intend to sell the note, and if there was no sale by the bank there could be no purchase by Bloch.

The evidence in the record establishes beyond doubt that Bloch had had at no time an intention of extinguishing the note or the debt; on the contrary his whole conduct was based upon his belief that by satisfying

the bank's claim, as he bound himself to do, he would with the consent of the bank, and with consent of, and for the interest of all the debtors upon the note and of all the parties interested in the ownership of the property, cause the title of the note together with all its accessory rights, to vest in himself as owner.

He was not acting as a volunteer in that matter. Eli Philip testified, acting in his own behalf and that of his brother and Mrs. Pellerin, he solicited Bloch and the latter consented to do precisely what he did. He testified that it was understood and agreed by Bloch that after he got control of the note he would advance moneys to the parties in order to enable them to make a crop on the property, which advances would be secured as to payment by a pledge upon the crop; that Mrs. Pellerin subsequently refused to carry out this plan. In the meantime, however, Bloch had satisfied the bank.

Mrs. Pellerin denied as a witness that she had authorized Eli Philip to ask Bloch to carry the note. Both courts have evidently accepted Eli Philip's testimony as true. Mrs. Pellerin cannot claim that any injury has resulted to her from Bloch's action. She had nothing to gain by letting matters stand as they were, for had not Bloch satisfied the bank it would itself have foreclosed the mortgage as it declared it would do. It is not claimed nor shown that a foreclosure by Bloch has placed it under conditions more disadvantageous than would have resulted from a foreclosure by the bank.

The bank has no interest in this controversy. The debt to it has been satisfied and by one who bound himself to it to do so for the makers. It had no further concern in the matter.

The fact that the title to the note did not vest in Bloch through the instrumentality of a sale made to him by the bank does not affect the rights of Bloch, if it became vested in him through some method recognized by law carrying with it a title to the note and the accessory rights attached to and accompanying it.

This court has on many occasions recognized that while the parties interested in a mortgage note are unable to satisfy at maturity the claims of the holder, they may by a collateral agreement made between themselves, the holder and a third person succeed in having the holders claim satisfied and extinguished without having by that fact the note itself extinguished with its accessory mortgages or privileges; on the contrary the title to the note with its mortgages passes to the party satisfying the claim of the holder without any assignment of the note being made by the holder. In Walmsley & Co. v. Theus, 107 La. 426, 31 South. 869, in referring to the judgment of the district court, we said that the judge was in error in supposing that unless the holder of the note had at the time of the payment to him consented to a transfer and made an assignment of the notes with subrogation, there would be no subrogation.

In this case the St. Mary Bank acting for and with the consent of the Bank of Jeanerette, delivered the note with its indorsement, unerased, to Bloch. In so doing the title vested in Bloch.

We are of the opinion that when Eli and St. Cyr Philip, the apparent owners of two-thirds of the property in litigation and joint makers with Mrs. Pellerin of the note held by the bank which was secured as to payment by special mortgage resting on the entire property to secure the entire debt, solicited Bloch to satisfy the bank's claim, with the understanding and agreement that upon his doing so the note with its mortgages would not be extinguished, but would pass as an unpaid mortgage note, and Bloch agreed to satisfy

the bank's claim, and did so with the bank's consent, the title to the note and its accessory mortgages passed to Bloch, as had been agreed upon.

It might be that under some special facts under such circumstances Bloch might hold the note open to a certain extent to equities which Mrs. Pellerin could urge as between herself and the bank, but her rights in the premises would be limited to that of pleading the same against Bloch; she certainly could not successfully urge that Bloch had made payment of the note for her. Payment is a matter of intention. Bloch unquestionably did not intend to make payment of the note for the benefit of any of the parties. The debt of the bank was not satisfied by moneys paid to it by any of its debtors but by the money of a third party. Mrs. Pellerin does not suggest that there are equities between herself and the bank. It is claimed by Mrs. Pellerin that she was notified and called upon to pay the whole amount of the note, prior to the issuing of the order of seizure and sale and that this could not be demanded of her.

The entire property was bound by a special mortgage to secure the whole debt for which whole debt, on her theory of the case, she was responsible.

For the purpose of nonenforcement of the mortgage the whole debt had to be paid; no one of the three makers could by offering to pay one-third of the debt, limit the enforcement of the mortgage to the other two-thirds of the property. The object of the notice was to enable the parties to prevent a threatened foreclosure of the whole property. To have called on Mrs. Pellerin to pay one-third of the debt would have been a vain and useless ceremony as she denies absolutely all mortgage liability.

We are of the opinion that the judgments of the district court and of the Court of Appeal were correct, and they are hereby affirmed.