MARCUS, Justice.
At issue in this suit is the ownership of a piece of property located at 2014 North Galvez Street in New Orleans. On December 30, 1966, Helen Tucker Poche and her husband James A. Poche conveyed this property by an act of sale before a notary and two witnesses for the recited consideration of $3100 to Joseph D. Tucker, Helen’s brother. This act of sale was duly registered in the conveyance office. On the same date, December 30, 1966, Joseph Tucker executed a counter letter stating that title to the property was placed in his name “for convenience only” and the property actually belonged to Helen as part of her separate and paraphernal estate. In the letter, Joseph obligated himself, his heirs and assigns to transfer the property to Helen or to any person she may suggest whenever called upon to do so. This letter was executed under private signature in the presence of two witnesses and was not recorded.
On January 3, 1975, Helen Tucker Poche, James Poche and Joseph Tucker executed a sale of the North Galvez Street property as well as certain property on Old Roman Street to Homeseekers Savings and Loan Association for $24,000 cash. In this act of sale, Joseph Tucker was identified as the record owner of the Old Roman Street property. Homeseekers immediately executed a resale of the property to Helen Tucker Poche, James Poche and Joseph Tucker for $24,000 on credit. The sale was duly registered in the conveyance office and the resale in the conveyance and mortgage offices.
On July 10, 1981, Joseph Tucker died testate, naming his widow Hazel McCallon Tucker as. his executrix. In his will, Joseph bequeathed his “interest” in the Old Roman Street and North Galvez Street properties to his widow and daughter. On November 19, 1981, Helen Tucker Poche registered in the conveyance office the December 30, 1966 counter letter which had been duly acknowledged before a notary public by one of the witnesses to the counter letter.
On April 28, 1982, Hazel McCallon Tucker as executrix of the Succession of Joseph Tucker filed a petition in district court seeking a declaratory judgment recognizing the succession’s undivided one-half interest in the North Galvez Street property and declaring the December 30, 1966 counter letter to be null and void. The petition further sought damages and attorney fees. Defendant, Helen Tucker Poche, answered the petition denying the succession’s ownership of the property and asserted a re-conventional demand seeking a declaratory judgment giving full force and effect to the counter letter and recognizing her as the sole owner of the North Galvez Street property. She also filed exceptions of no right or cause of action, alleging that under La.Civ.Code art. 2239, “only forced heirs and creditors have the right ... to set aside a Counter Letter.” Plaintiff moved for a summary judgment. After a hearing, the trial judge overruled the exceptions of no right and cause of action and granted plaintiff’s motion for summary judgment, declaring the counter letter null and void.
Helen Tucker Poche appealed, seeking a reversal of the trial judge’s rulings. The court of appeal affirmed. It found that the exceptions of no right and cause of action were properly overruled because the strictures of La.Civ.Code art. 2239 were inapplicable to the factual situation at bar. The court also ruled that the sale and resale through Homeseekers nullified the previously unrecorded counter letter and resulted in co-ownership of the property in ques *1022 tion by Joseph Tucker and his sister Helen Tucker Poche.[1] On Helen’s application, we granted certiorari to review the correctness of that decision.[2]
Two issues are presented for our consideration: first, whether Hazel McCallon Tucker as executrix of the Succession of Joseph Tucker has a right and cause of action to set aside a counter letter made by the decedent; second, whether, as a result of the salé and resale through Homeseek-ers, Joseph and Helen became co-owners of the North Galvez Street property, thereby making the December 30, 1966 counter letter ineffective.
As to the first issue, we hold that Hazel McCallon Tucker as executrix of the Succession of Joseph Tucker does have a right and cause of action to set aside a counter letter made by decedent. Contrary to defendant’s arguments, La.Civ.Code art. 2239[3] does not limit the right of action of a maker of a counter letter or his representative to try to set aside that counter letter. Furthermore, La.Civ.Code art. 2239 does not deprive the plaintiff in this case of a cause of action under the facts as alleged.
In regard to the second issue, we hold that the sale and resale effected no change in the ownership of the North Gal-vez Street property and the counter letter is still fully valid and enforceable. When real property is sold to a homestead for cash and simultaneously resold by the homestead to its owner, the latter has not acquired anything. Such a transaction, which is for the purpose of providing the homestead the security of a vendor’s lien and first mortgage, is purely a pignorative contract. Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959); Ruffino v. Hunt, 234 La. 91, 99 So.2d 34 (1958); New Orleans Federal Savings & Loan Association v. Pharr, 377 So.2d 387 (La.App. 4th Cir. 1979). The sale and resale transaction whereby one person sells to an intervenor who resells the property to the original seller and a third party[4] has been held to effect a donation of an interest in the property to the third party, but only when there is donative intent. Succession of Daste, 254 La. 403, 223 So.2d 848 (1969); New Orleans Federal Savings & Loan Association v. Pharr, supra; Succession of Russo, 246 So.2d 26 (La.App. 4th Cir.), writ refused, 258 La. 760, 247 So.2d 861 (1971). This court has also recognized that a sale by a property owner to a lending institution and a resale to the seller plus another party can be accomplished without any intent to transfer title to the new party added on resale. Succession of Farley, 205 La. 972,18 So.2d 586 (1944). In Farley, we held that:
[the original seller’s] transaction with the building and loan association was never intended to operate as a transfer of title to the property which he mortgaged to secure the loan made by the association. The sale and resale of the land constituted a pignorative contract, which was made in the form of a sale and resale for the purpose merely of giving the building and loan association a vendor’s lien, in addition to the special mortgage.
Hence, in the case at bar, we must determine if Helen Tucker Poche intended by means of the sale and resale to donate a half interest in her property to Joseph Tucker.
It is unclear why Helen and her husband James joined in the sale and resale through Homeseekers. Clearly, their participation was not needed for Homeseekers to perfect a valid vendor’s lien and mortgage on the property because the homestead could rely on the public records doctrine. Hunter v. *1023 Buckner, 29 La.Ann. 604 (1877) (when the real owner of property allows it to stand on the public records as owned by another, a third party can rely on the public records to issue a valid mortgage to the record owner). Thus, one could argue that Helen’s unnecessary participation in the sale and resale evidenced her intent to donate an interest in the property to Joseph.[5] However, we have held that when a true owner of property joins with others in a sale and resale of the property, the true owner may not be able to deny the others’ ownership vis a’ vis the mortgagee, but the transaction does not alter the actual facts of ownership as between the parties. Pellerin v. Sanders, 116 La. 616, 40 So. 917 (1906). Therefore, although we can only hypothesize as to why Helen and James joined in the sale and resale, we find that Helen’s mere participation in the transaction did not evidence her intent to give her brother any interest in her property. Nor has the plaintiff presented any other evidence of donative intent. Thus, we hold that no donation was accomplished.
Additionally, we find that the counter letter was unaffected by the sale and resale. Plaintiff alleged that the sale to Homeseekers satisfied Joseph Tucker’s obligation in the counter letter to retransfer the property to Helen Tucker Poche or “to any person that she may suggest.” Home-seekers allegedly was the party whom Helen suggested as her chosen transferee. Thus, plaintiff argues, the resale was made free of the counter letter and Helen cannot use the counter letter to traverse the record ownership of the property in Helen and Joseph. This contention is without merit. The sale and resale through Home-seekers was merely a pignorative device to provide the homestead with a vendor’s lien and mortgage and the transaction did not relieve Joseph of any of his obligations under the counter letter. Furthermore, the validity of the counter letter as between the parties to that letter was not affected by the homestead transaction. Safford v. Ellish, 276 So.2d 884 (La.App. 1st Cir. 1973); Cavallino v. Cavallino, 231 So.2d 623 (La.App. 4th Cir.1970). Thus, as between Helen and Joseph or Joseph’s representative, the counter letter is fully effective to show that Helen is the sole owner of the contested property even though the public records show title in Helen and James Poche and Joseph Tucker.
Plaintiff also contends that Helen is estopped from denying the succession’s co-ownership of the property with her because she admitted under oath in a deposition that she did not object when Joseph made his will disposing of an interest in the property. Further, she admitted that, at the time of the making of the will, she said that Joseph did own half of the property in question. We find these admissions of pri- or statements do not estop Helen from denying the succession’s co-ownership of the property. Helen never testified that she and Joseph actually owned the property jointly; hence, she is not estopped from denying such co-ownership. Helen explained in the deposition that she only made those statements to avoid upsetting her brother when he was near death, but she “knew the way things stood.”
Therefore, for the reasons expressed, we reverse the judgment of the court of appeal recognizing the Succession of Joseph D. Tucker as the owner of an undivided one-half interest in the property located at 2014 North Galvez Street. We remand the case to the district court to decide Helen Tucker Poche’s reconventional demand, which was not considered by the courts below.
DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the district court for *1024 further proceedings in accordance with the views herein expressed.
DIXON, C.J., concurs with reasons.
LEMMON, J., concurs and assigns reasons.
WATSON, J., dissents.

. 436 So.2d 1207 (La.App. 4th Cir.1983).

. 441 So.2d 768 (La.1983).

. La.Civ.Code art. 2239 provides:
Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime].

.Note, however, that this is not the situation in the instant case; no new parties were added on resale. Rather, the same parties appeared in both the sale and the resale.

. However, although Helen’s participation was not necessary for Homeseekers to perfect a valid mortgage and vendor’s lien on the property, her presence may have been desired (speculating that Homeseekers knew of the existence of the counter letter) to give the homestead certain procedural rights against Helen in the event she recorded the counter letter and a foreclosure proceeding was necessary.