GUIDRY, Judge.
In this partition proceeding, intervenors, the heirs of Elfie Lafleur (hereafter La-fleur heirs), appeal a judgment of the trial court maintaining an exception of prescription filed by the heirs of Lydia Fontenot Lafleur (hereafter Fontenot heirs) in response to the Lafleur heirs’ intervention in a suit for partition by licitation filed by the Fontenot heirs against Cynthia F. Cobb. We reverse and remand.
Lydia Fontenot Lafleur and Elfie La-fleur, a childless couple, left reciprocal wills granting the usufruct to his/her survivor over all the property of which they died possessed, both separate and community. Lydia died on October 11, 1985. On the ex parte petition of Elfie Lafleur, her will was probated and Elfie Lafleur was ultimately sent into possession of all community property, including the family residence, and was recognized as owner of a usufruct over Lydia’s separate property. This judgment of possession is dated January 29, 1985.
The record reflects that the family home was built with community funds on a 44.9 arpent tract of land which was Lydia Fon-tenot Lafleur’s separate property. As noted hereafter, under La.C.C. art. 2366, the home when built became Lydia’s separate property and was improperly designated as community property in the judgment of possession in her estate. In that same judgment, the Fontenot heirs were recognized as her legal heirs and, as such, owners of all of Lydia’s separate property, subject only to Elfie Lafleur’s usufruct.
Elfie Lafleur died November 16, 1989 and on ex parte petition of the Lafleur heirs, they were recognized, by judgment of possession signed December 11, 1989, as owners of all of his property. This judgment included the family home among the properties recognized as belonging to the Lafleurs.
On February 13, 1990, the Fontenot heirs, except Cynthia Cobb, who was made a defendant, filed the instant suit to partition by licitation the 44.9 arpent tract of land they had inherited from Lydia.[1] The Lafleur heirs intervened in this suit seeking $35,000 or such amount to be set by the court as the value of the home formerly owned by Lydia and Elfie. The Fontenot heirs, in response to the intervention, filed an exception of no right of action based upon La.C.C. art. 2366, which provides as follows:
“If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.
Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.”
Thereafter, the Lafleur heirs also filed a petition for declaratory judgment seeking to be declared the owners of the house in dispute.
The Fontenot heirs and the Lafleur heirs each filed peremptory exceptions of prescription based on La.C.C. art. 2369, which states:
*270 “A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime.
The obligation to account prescribes in three years from the date of termination of the community property regime.”
The Lafleurs and Fontenots each argued that prescription began to run upon the death of Lydia on October 11, 1985, the date the community terminated. The Fon-tenot heirs urged that inasmuch as Elfie Lafleur had not demanded an accounting within three years of the termination of the community regime by Lydia’s death that his claim and that of his heirs were barred and, therefore, the intervention and the petition for declaratory judgment should be dismissed. On the other hand, the Lafleur heirs argued that Elfie inherited Lydia’s community interest in the house and inasmuch as the Fontenot heirs did not seek an accounting within three years of Lydia’s death, any claim they may have had to the house was barred.
The exceptions of prescription were considered by the trial court and a judgment, without supporting reasons, was rendered August 27, 1990 in favor of the Fontenot heirs and against the Lafleur heirs, dismissing both the Lafleurs’ petition for intervention and their petition for declaratory judgment. The judgment of the trial court makes no reference to the exception of prescription filed by the Lafleur heirs. Presumably, the trial court intended to overrule same. The Lafleur heirs appeal.
The Fontenot heirs admit that inasmuch as the house was built with community funds on Lydia’s property, that Elfie had a claim for reimbursement from the community for one-half (V2) of the funds used to build the home. They argue, however, that, upon Lydia’s death, Elfie had three years to seek an accounting for his one-half (V2) of the community funds which were used to construct the family home and his failure to do so bars the claim of his heirs to now assert such claim.
The provisions of La.C.C. art. 2369 are not applicable under the circumstances of this case and the trial court erred in concluding otherwise. Article 2369 has reference to an accounting in relation to community property over which one of the spouses had exclusive control at the termination of the community. As set forth in this article’s revision comments:
[[Image here]]
(b) This provision establishes the obligation of a spouse who has community property under his control at the termination of the community property regime to account to the other spouse for his administration. This is a heritable obligation. Thus, a spouse, or his heirs, may demand an accounting under this provision from the other spouse, or his heirs.
[[Image here]]
In contrast with Article 2354, the obligation for accounting under Article 2369 is not predicated upon a showing of fraud or bad faith in the administration of the community. A spouse having control of community property at the termination of a community property regime occupies the position of a co-owner under the general law of property. Thus, he ought to be accountable for any loss or deterioration of the things under his control attributed to his fault, and for the fruits produced by the things, since the termination of the community property regime. Article 2369 thus reiterates a rule that governs the relations between co-owners.”
The house in question became Lydia’s separate property when it was constructed, albeit with community funds (C.C. art. 2366). Upon Lydia’s death, ownership of the home was acquired by the Fontenot heirs subject to Elfie’s usufruct and his right to claim reimbursement for one-half (V2) of the community funds expended in constructing the home. Since the home was Lydia’s separate property, La.C.C. art. 2369 is clearly not applicable. Further, the erroneous characterization of the home as community property in Lydia’s ex parte succession proceeding was ineffective as concerns the Fontenot heirs. Likewise, the ex parte judgment of possession rendered in Elfie Lafleur’s succession, which errone *271 ously characterized the family home as community property, was not binding on the Fontenot heirs and could not effectively transmit to Elfie’s heirs any greater right than that which Elfie had, i.e., the right to reimbursement for one-half (⅛⅛) of the community funds expended in building the family home.
Accordingly, we conclude that the Lafleur heirs’ right to demand reimbursement for one-half (½) of the community funds used to construct the family home did not prescribe under Article 2369 and the trial court erred in dismissing their intervention and petition for declaratory judgment. Further, we conclude that the time during which the Lafleur heirs may assert their right to reimbursement for the sum due the estate of Elfie Lafleur is governed by La.C.C. art. 3499 (former Article 3544).
La.C.C. art. 3499 provides: “Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years”.
In Joeffroy v. Succession of Arceneaux, 507 So.2d 1281 (La.App. 3rd Cir.1987), the naked owners of a house and plot of land brought suit against the succession of the usufructuary to recover certain sums they claimed were due because of maladministration. The defendants filed an exception of prescription which was maintained by the trial court.
In reversing that judgment, we stated:
“[T]he facts alleged here set forth a personal action to enforce a legal obligation which action is not enumerated in the articles providing other prescriptive periods and is therefore subject to the libera-tive prescription of ten years provided by former Article 3544.
Our conclusion is not without support in the jurisprudence. In Cochran v. Violet, et al, 38 La.Ann. 525 (1886) our Supreme Court was called upon to decide the question of the liberative prescription applicable to an action to enforce the alleged rights of the plaintiff to an account from his mother for her usufruct of property consisting of the plaintiffs share of the proceeds of the sale of community property belonging to his mother and his deceased father which was purchased by plaintiff’s mother. It is true that in the cited case the usufruct had been, by virtue of the sale, converted into a usufruct of consumables, but the reasoning of the Cochran court is equally applicable to the instant case. The court reasoned that since the Code did not “in terms fix the kind of prescription which can be invoked in bar of the demand for an account from the usufructuary of the property or things which he has held in usufruct”, the action was a personal action not enumerated in the articles treating the prescription of one, three or five years and was, accordingly, governed by the prescription of ten years provided by Article 3544. A similar conclusion was reached in Burdin v. Burdin, 171 La. 7, 129 So. 651 (1930).
Our conclusion is further supported by the reasoning of our Supreme Court in Dean v. Hercules Incorporated, supra. In Dean the court said:
“ — in order to determine the incidents of the breach of a legal obligation and the applicable prescriptive period — , we look to the closest analogous situation provided for in the Code.”
The duty owed by a usufructuary is most nearly analogous to the fiduciary duty owed by a negotiorum gestor, viz., the duty of acting as a prudent administrator of the property. C.C. Article 539; C.C. Article 2298; Lococo v. Lococo, 462 So.2d 893 (La.App. 1st Cir.1984).
A suit for breach of a fiduciary duty is a personal action subject to the liberative prescription of ten years. C.C. Article 3499 (former Article 3544).”
Joeffroy, supra, at 1283, 1284.
While the facts in this case are not identical to those in Joeffroy, supra, we find the legal principles enunciated therein applicable. The Lafleur heirs seek to enforce a legal obligation owed to their ancestor, El-fie Lafleur, by the legal heirs of Lydia Fontenot, i.e., reimbursement for one-half (V2) of the funds used to construct the family home on the separate property of *272 Lydia Fontenot, which legal obligation is not enumerated in the articles providing other prescriptive periods and is, therefore, subject to the liberative prescription of 10 years provided by C.C. art. 3499. Accordingly, the intervention filed by the Lafleur heirs and their petition for declaratory judgment were timely filed.[2]
For these reasons, the judgment of the trial court maintaining the Fontenot heirs’ exception of prescription is reversed and this matter is remanded to the trial court for further proceedings not inconsistent with the views expressed herein. Costs of this appeal are assessed to the Fontenot heirs in proportion to their interest in the Succession of Lydia Fontenot Lafleur.
REVERSED AND RENDERED.

. The Fontenot heirs’ acceptance of the succession of Lydia Fontenot Lafleur makes them liable for any obligation owed by their ancestor. Succession of Dukes v. Williams, 285 So.2d 887 (La.App. 4th Cir. 1973); La.C.C. art. 988.

. Since the intervention by the Lafleur heirs was filed within 10 years of the death of Lydia Fontenot Lafleur, we need not consider whether the prescription provided for by La.C.C. art. 3499 was suspended during the period when Elfie Lafleur enjoyed the usufruct over Lydia Fontenot’s separate estate.