762 So.2d 1259 (2000)
Carmela C. BREHM
v.
Milton L. BREHM, Jr.
No. 00-CA-201.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2000.
*1261 Jana E. Smith, Bertrand & Smith, Metairie, Louisiana, Counsel for plaintiff-appellee.
Pat M. Franz, Metairie, Louisiana, Counsel for defendant-appellant.
Court composed of Judges CHARLES GRISBAUM, Jr., MARION F. EDWARDS and CLARENCE E. McMANUS.
McMANUS, Judge.
Plaintiff, Carmella C. Brehm, and defendant, Milton C. Brehm, Jr., appeal from a district court judgment partitioning the community. For the following reasons, we affirm in part, reverse in part and render.
On appeal, Mr. Brehm assigns these trial court errors:
1. The trial court erred as a matter of law in holding that the matrimonial domicile on the separate estate of Mr. Brehm became community property through the use of community funds to construct improvements.
2. The trial court erred in holding that funds received by Mr. Brehm from his mother became commingled with community funds so as to become community property.
Ms. Brehm assigned these trial court errors:
1. In the event that this Court finds that the matrimonial domicile is Mr. Brehm's separate property, the trial court erred in failing to find that Ms. Brehm is entitled to the increased value of the property attributable to common labor of the spouses.

*1262 2. The trial court erred in finding that the money that Ms. Brehm inherited is community property.
3. The trial court erred in finding that Ms. Brehm owed reimbursement to community regime for her liquidation of the Lincoln National Life Insurance Policies.
4. The trial court erred in finding that Ms. Brehm owed reimbursement to Mr. Brehm for paying her alimony, and health and automobile insurance premiums during the pendency of the appeal on the permanent alimony issue.

FACTS
The parties, Mr. Brehm and Ms. Brehm, were married for approximately thirty years, and had four daughters. The record reflects that Ms. Brehm left the matrimonial domicile in August of 1993. On January 13, 1994, the parties were granted a judgment of divorce.
On May 17, 1994, Ms. Brehm filed a petition of community property. On March 16, 1998, the parties entered into a consent judgment which reflected those issues on which the parties agreed. On March 27, 1998, the court rendered a judgment in open court. On September 9, 1999, the court signed a written judgment in accordance with the court's oral judgment. In its judgment, the trial court ruled that the marital domicile, valued at $140,000, is community property, and that the money inherited[1] by both Mr. and Ms. Brehm is community property because it was commingled. The trial court further ruled that Ms. Brehm owes reimbursement to the community for cashing the Lincoln National Life Insurance policies in the amount of $15,856.68, subject to a credit of all fees. The trial court further ruled that Ms. Brehm owes reimbursement to Mr. Brehm for permanent periodic alimony, and health insurance and automobile insurance premiums. The trial court further ruled that Mr. Brehm is entitled to reimbursement for paying the homeowners' insurance premiums to Liberty Mutual Insurance Company (Liberty Mutual) and Prudential Property and Casualty Insurance Company (Prudential), flood insurance, property and casualty insurance, and termite and pest control costs. The trial court further ruled that the lot adjacent to 1721 High Street is Mr. Brehm's separate property. Finally, the trial court ordered that both parties be responsible for the tax consequences of the rendered judgment.

STANDARD OF REVIEW
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99, 101-102. A court of appeal may not set aside a trial court's finding of fact in absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989); Madere v. Madere, 93-610 (La.App. 5 Cir. 2/9/94), 632 So.2d 1180, 1182. In light of these precepts, we will now address the specifications of error of the community property partition.

VALUATION OF MATRIMONIAL DOMICILE
Mr. Brehm argues that the matrimonial domicile did not become community property by the use of community funds to construct the house and subsequent improvements. Ms. Brehm responds that the matrimonial domicile became community property through the uncompensated labor of the spouses. She further responds that the couple re-financed the *1263 matrimonial domicile for $10,000 on August 6, 1969, and that the sale and re-sale was an act of donation which gave her an undivided half interest in the house.
The matrimonial domicile of the parties is located at 1721 High Avenue in Metairie, Louisiana. There were two adjoining, vacant lots before the parties were married. After the parties were married, they spent $23,588.93 of community funds to build a home on one of the vacant lots. There is no dispute on appeal as to the separate nature of the lots that belong to Mr. Brehm.
LSA-C.C. art. 2366 provides, in pertinent part:
Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.
Since the matrimonial domicile was built with community funds on Mr. Brehm's separate property, Ms. Brehm is entitled to a claim for reimbursement for one half of the funds used to build the home. See Barr v. Barr, 613 So.2d 1159, 1164 (La. App. 5 Cir.1993); McDonald v. McDonald, 607 So.2d 984, 987 (La.App. 3 Cir.1992); Bordelon v. Cobb, 596 So.2d 268, 270 (La. App. 3 Cir.1992).
Ms. Brehm argues that she is entitled to the increased value of the property from the spouses' uncompensated labor. We disagree.
LSA-C.C. art. 2368 states:
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
A claimant spouse under LSA-C.C. art. 2368 has the burden of proving: (1) the property is separate, (2) the property increased in value, and (3) the increase in value was based on the uncompensated or undercompensated labor of the other spouse; the burden then shifts to the other spouse to prove that the increase in value was due to factors other than the uncompensated or undercompensated labor. Salley v. Salley, 95-0387 (La.10/16/95), 661 So.2d 437, 438; Krielow v. Krielow, 93-2539 (La.4/11/94), 635 So.2d 180, 183.
In Stubbs v. Stubbs, 610 So.2d 892 (La. App. 1 Cir.1992), writ denied, 612 So.2d 62 (La.1993), the First Circuit found that the increase in value of the home, which was separate property, was attributable to common labor of the parties. In Stubbs, the testimony of the parties established that during the marriage, the parties shared the labor required to expand the roof of the house, add a porch, add a living room and add a garage to the house. Id. at 897. The parties also placed paneling in the house and installed new carpeting. Id.
In this case, the marital domicile was built with community funds during Mr. and Ms. Brehm's marriage. The cost of building the house was $23,588.93. Both Mr. and Ms. Brehm testified that improvements were made to the house. The record reflects that Ms. Brehm painted, installed new wallpaper, and performed other routine repairs and improvements while Mr. Brehm added a new roof and a new patio to the house. While the Brehms did perform routine maintenance during the marriage, the record indicates that the substantial part of the significant work was performed by hired contractors. Therefore, Ms. Brehm is not entitled to the increased value of the house.
Ms. Brehm also argues that the sale and resale of the house to Citizens Homestead Association constituted an act of donation effecting a change in ownership which provided her with one half interest in the house. We disagree. In *1264 1969, the Brehms sold the property for $10,000.00 to Citizens Homestead Association and simultaneously Citizens Homestead Association resold the property to the Brehms. The sale and resale of the property effected no change in the ownership of the matrimonial domicile because the transaction was entered into for the purpose of providing the homestead with a vendor's lien and first mortgage. Succession of Tucker v. Poche, 449 So.2d 1020, 1022 (La.1984).
Therefore, Ms. Brehm is only entitled to $11,794.47, which is half of the initial construction costs of building the house. Since we find that the matrimonial domicile is Mr. Brehm's separate property, Mr. Brehm is not entitled to a claim of reimbursement for paying the homeowner's insurance, flood insurance, property and casualty insurance, and termite and pest control costs.

MONETARY GIFTS FROM THE SPOUSE'S PARENTS
Both Mr. and Ms. Brehm argue that they are entitled to a claim of reimbursement from the community for using their separate funds for the benefit of the community. Specifically, Mr. Brehm argues that his mother gave him $22,000 as a gift and therefore, he is entitled to reimbursement for $17,772.00 of those funds that were traced to the purchase of a community vehicle. Ms. Brehm argues that the $14,600.00 that she inherited from her mother was spent on the community, and she is entitled to a claim for reimbursement.
Under Louisiana law, property is characterized as either community or separate. LSA-C.C. art. 2335; Curtis v. Curtis, 403 So.2d 56, 58 (La.1981). Separate property includes property acquired by the spouse prior to the marriage; property acquired with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; and property acquired individually by gift or inheritance. LSA-C.C. art. 2341.
The intent of the donor controls or determines the identity of the donee or donees. Allbritton v. Allbritton, 561 So.2d 125, 127 (La.App. 3 Cir.1990), writ denied, 565 So.2d 445 & 565 So.2d 454 (La.1990). If the donor is deceased, then the intention of the decedent is inferred from the relation of the parties and all of the facts and circumstances in the case. Purcell v. Purcell, 29,663 (La.App. 2 Cir. 6/23/97), 697 So.2d 728, 734.
The mere mixing of separate funds and community funds in the same account does not, of itself, convert an entire account into community property; however, when separate funds are commingled with community funds indiscriminately, so that the separate funds cannot be identified or differentiated from the community funds, then all the funds are characterized as community funds. Curtis v. Curtis, 403 So.2d at 58. The burden of proof is on the party claiming reimbursement to show that separate funds existed and that those funds were used for the benefit of the community. Sherrod v. Sherrod, 97-907 (La.App. 5 Cir. 3/25/98), 709 So.2d 352, 356, writ denied, 98-1121 (La.6/5/98), 720 So.2d 687.
Mr. Brehm made the necessary showing that the $22,000.00 that he received from his mother was a gift to him individually. Further, Mr. Brehm traced $17, 771.15 of those funds to the purchase of a vehicle that was used by the community.
The record reflects that there are two check stubs dated June 10, 1993, and June 15, 1993, both in the amount of $8,000.00. The funds were deposited in the Jefferson Parish School Board Employee Credit Union Savings Account S-1 in the name of Mr. Brehm. There is a check dated July 15, 1993 in the amount of $6,000. Also, there is a bank statement dated July 16, 1993 indicating a deposit of $6,630.70 to *1265 the Jefferson Parish School Board Savings Account S-1.
On July 16, 1993, a 1993 Buick was purchased with a total sales price of $18,735.83. The record reflects that the Brehms financed $17,772.00 to purchase the car. On July 19, 1993, there was a withdrawal of $4,000.00 from the Jefferson Parish School Board Savings Account S-1. On August 12, 1993, there was a withdrawal of $13,271.15 from the same account. Testimony from Mr. Brehm and his sister, Ms. Barbara Calongne, established that the $22,000.00 received from Mr. Brehm's mother was a gift. Ms. Calongne testified that each sibling received $22,000.00 from Mr. Brehm's mother. The deposits of those funds which went into the Jefferson Parish School Board Savings Account S-1 were so close in time as the withdrawals which came from the account that there is a valid reimbursement claim by Mr. Brehm for the $17,771.15 that he traced to the purchase of the community vehicle.
Ms. Brehm claims that she received $14,600.00 from her mother's inheritance, however, she did not provide documentation that the separate funds existed and were used for the benefit of the community. Accordingly, we find that Mr. Brehm is entitled to a claim for reimbursement for $17,771.15 and we find that Ms. Brehm is not entitled to a claim for reimbursement.

REIMBURSEMENT FOR LIFE INSURANCE POLICIES
Ms. Brehm argues that Mr. Brehm is not entitled to reimbursement for half of the proceeds from two life insurance policies issued through Liberty Mutual because she needed the money to support herself because she was not gainfully employed.
The assets in question were acquired during the existence of the legal regime and are presumed to be community property. LSA-C.C. Art. 2340. Whether a life insurance policy is the separate property of the insured, or belongs to the community existing between the insured and his or her spouse, is determined by the marital status of the insured at the time the policy is issued. LSA-C.C. Art. 2340; Berry v. Metropolitan Life Insurance Company, 327 So.2d 521, 523 (La.App. 1 Cir.), writ denied, 329 So.2d 760 (La.1976).
At the time that the Lincoln National Life Insurance Policies were issued, Mr. and Ms. Brehm were married. Therefore, the policies are community property. Ms. Brehm, without the consent of Mr. Brehm, cashed both policies for $16,856.68. While Ms. Brehm stated that she needed to cash the policies because she did not have the money she needed to support herself, she did not produce receipts to show any of her living expenses prior to award of alimony pendente lite except medical bills that totaled $521.71. Therefore, Mr. Brehm is entitled to reimbursement for half of the proceeds subject to Ms. Brehm's credit for $521.71.

REIMBURSEMENT FOR ALIMONY, HEALTH INSURANCE, AND CAR INSURANCE
Subsequent to this Court's reversing the trial court's award of permanent alimony to Ms. Brehm in Brehm v. Brehm, 685 So.2d 377 (La.App. 5 Cir. 11/26/96), writ denied, 688 So.2d 505 (La.2/7/97), Mr. Brehm requested reimbursement for the permanent periodic alimony, and health and automobile insurance premiums that he paid during the time period that the issue of permanent alimony remained unresolved. Ms. Brehm argues that Mr. Brehm is not entitled to reimbursement for the total amount paid to Ms. Brehm for alimony, and health insurance and automobile insurance premiums. Ms. Brehm further argues that the trial court erred in granting Mr. Brehm reimbursement for this claim because he received tax benefits.
The legal regime of community property is terminated by the judgment of divorce. LSAC.C. art. 2356. An obligation incurred during the existence of the community *1266 for the common interest of the spouses or for the interest of the other spouse is a community obligation. LSAC.C. art. 2360. An obligation is separate when incurred prior to marriage, or during the community, though not for the common interest of the spouses or for the interest of the other spouse, or when incurred after termination of a community property regime. LSAC.C. art. 2363. If community property has been used to satisfy a separate obligation of an individual, the other individual is entitled to reimbursement upon the termination of the community, for one-half of the amount the property had at the time it was used. LSAC.C. art 2364.
The termination of the community occurred on January 13, 1994 and Mr. Brehm paid Ms. Brehm's health and automobile insurance premiums until the issue of permanent alimony was resolved. Since Ms. Brehm was not awarded permanent alimony, Mr. Brehm is entitled to reimbursement for the permanent periodic alimony, and health and automobile insurance premiums that he paid.
For the foregoing reasons, we reverse the trial court's judgment finding that the matrimonial domicile is community property, and we reverse the trial court's judgment granting Mr. Brehm reimbursement for the homeowner's insurance premiums, flood insurance, and termite and pest control costs. We further reverse the trial court's judgment ruling that all of the funds which Mr. Brehm received from his mother is community property and we find that Mr. Brehm is entitled to a reimbursement claim for $17,771.15. We affirm all other portions of the trial court judgment.
REVERSED IN PART; AFFIRMED IN PART, AND RENDERED.
NOTES
[1] The funds were actually gifts from each party's parent.