MARC E. JOHNSON, Judge.
12Plaintiff/AppelIant, Wallace Campbell Drennan, III, and Defendant/Appellee, Claudia Carrere Drennan, seek review of the trial court’s judgment involving the partition of their community property from the 24th Judicial District Court, Division “C”. For the following reasons, we affirm in part, reverse in part, and render judgment.
FACTS AND PROCEDURAL HISTORY
The following are the facts pertinent to this appeal.
Wallace C. Drennan, III and Claudia Carrere Drennan (hereinafter referred to as “Ms. Carrere”) were married on July 24, 1987. On March 15, 1998, Mr. Dren-nan inherited one-eighth (12.5%) of his family-owned construction corporation, Wallace C. Drennan, Inc. (hereinafter referred to as “WCD”), from his father, Wallace C. Drennan, II. Subsequent to Wallace C. Drennan, II’s death, WCD can-celled the original corporate shares of stock and authorized an increase in the outstanding shares to 10,000. After a period of redeeming the shares of stock |afor various reasons in 1993, Mr. Drennan’s mother, Mrs. Susan Drennan (hereinafter referred to as “Mrs. Drennan”), then owned 5,000 shares. Mr. Drennan owned 792 shares, and his siblings (Douglas, Jonathan and Patrick) each owned 792 shares.[1]
On June 15, 1994, Mrs. Drennan sold 2,500 shares of her stock to Mr. Drennan for $800,000.00 through an Act of Credit Sale. In order to fund his payment for the sale, Mr. Drennan signed a pledge, security agreement and promissory note in favor of Mrs. Drennan. Mrs. Drennan’s remaining shares were sold to Jonathan. Mrs. Drennan’s stock certificate evidencing her 5,000 shares was cancelled, and those shares were reissued accordingly to Mr. Drennan and Jonathan. Mr. Drennan made payments on the promissory note from his and Ms. Carrere’s joint checking account.
In March 2000, Mrs. Drennan forgave the balance of the debt, $130,848.00, owed to her by Mr. Drennan. Eventually, Mr. Drennan acquired the remaining shares of stock in WCD owned by Douglas, Jonathan, Patrick, and the treasury. In order to achieve a stock split in September 2003, WCD cancelled the previous shares and issued 10,000 new shares to Mr. Drennan as the sole shareholder.
On June 13, 2006, WCD, through Mr. Drennan as its president, entered into an agreement to purchase immovable property located at 2225 Chestnut Street (hereinafter referred to as “the Chestnut St. property”) in New Orleans, Louisiana. During the following month, Mr. Drennan filed a Petition for Divorce against Ms. Carrere pursuant to La. C.C.P. art. 102 on July 21, 2006. Shortly thereafter, WCD *180 transferred $800,000.00 to Mr. Drennan on July 31, 2006 and $75,514.81 on August 1, 2006. Mr. Drennan purchased the Chestnut St. property in his own name for $875,000.00 on August 2, 2006. On the same date of the purchase, Mr. [4Prennan entered into a mortgage and signed a promissory note in favor of WCD for $875,000.00. Mr. Drennan and Ms. Car-rere physically separated on August 12, 2006.
On March 30, 2007, the end of the 2007 fiscal year, WCD paid Mr. Drennan a bonus of $875,000.00. On the same day, Mr. Drennan repaid WCD $946,157.42, which was recorded in WCD’s general ledger. A few months later, the parties were divorced on August 10, 2007. Afterwards, the parties instituted proceedings to partition the community property.
Several joint pre-trial orders and joint stipulations were filed in the matter in furtherance of the partition of the community property. On June 28, 2010, Ms. Car-rere filed a Motion for Partial Summary Judgment, alleging she was entitled to 50% ownership of WCD because the shares of stock held by Mr. Drennan were partly community property. The trial court denied the motion on August 13, 2010.
A trial on the valuation of WCD and the classification of its shares of stock was held on September 7 and 9, 2010. In a judgment rendered on December 8, 2010, the trial court held that 52% of the stock in WCD was owned by the community regime, and 48% of the stock in WCD was owned by Mr. Drennan as his separate property. The trial court also held that WCD was valued at $10,000,000.00, and Ms. Carrere was entitled to an award of $2,600,000.00, which was determined to be 50% of the value of the community shares in WCD ($5,200,000.00).
On January 11, 2011, Ms. Carrere filed a Motion to Declare Entitlement to Community Property Funds, alleging she was entitled to one-half of the community funds used to purchase the Chestnut St. property. On May 16, 2011, the trial court found that the $875,000.00 used to purchase the Chestnut St. property was both separate and community property, such that 52% of the funds |swere community property and 48% of the funds were Mr. Drennan’s separate property. The trial court then awarded Ms. Carrere $227,500.00, which was determined to be one-half of Ms. Car-rere’s share of the community funds used to acquire the Chestnut St. property ($455,000.00).
Subsequently, Mr. Drennan filed a Motion for New Trial on May 31, 2011. In that motion, Mr. Drennan claimed the $875,000.00 used to purchase the Chestnut St. property was from the bonus he received from WCD, and he had paid federal income taxes in 2007 on that bonus. Mr. Drennan argued that any sum awarded to Ms. Carrere should have been reduced by the minimum tax rate he paid on the bonus. On August 3, 2012, the trial court granted Mr. Drennan’s motion to set a new trial date. After a hearing on the motion, the trial court rendered a judgment on September 9, 2011 that again held Ms. Carrere was entitled to $227,500.00 as her share of the community funds used by Mr. Drennan to acquire the Chestnut St. property. The trial court did not assess Ms. Carrere with any tax consequences associated with the purchase of the property.
In a Final Judgment of Partition rendered on September 21, 2011, the trial court partitioned to Mr. Drennan, among other property, 52% interest in WCD deemed as community property (valued at $5,200,000.00) with 48% deemed as his separate property, and 52% of the funds used *181 to acquire in the Chestnut St. property deemed as community property (valued at $455,000.00) with 48% of the funds deemed as his separate property. Mr. Drennan was also awarded, among other things, $41,568.00 as reimbursement for 50% of the restoration to the Chestnut St. property. The trial court determined that an equalizing payment of $2,942,780.00 was owed to Ms. Carrere by Mr. Drennan. In total, the trial court found Mr. Drennan owed Ms. Carrere $2,897,747.00 with legal interest for the partitioning of the property-
| r,The instant appeal followed the September 21, 2011 judgment.
ASSIGNMENTS OF ERROR
On appeal, Mr. Drennan raises the following assignments of error: the trial court committed manifest error in valuing WCD at $10,000,000.00 by averaging the divergent expert opinions, and the trial court committed manifest error in awarding Ms. Carrere 26% of the funds used to pay the Chestnut St. property loan. Through her Answer, Ms. Carrere raises the following assignments of error: the trial court erred by reclassifying 1,090 shares of stock as Mr. Drennan’s separate property, where the community clearly purchased those shares years before the purported donation from Mr. Drennan’s mother, and the trial court erred in awarding her only 26% of the funds used to purchase the Chestnut St. property, where she actually owned, at least, a 40% interest in WCD.
LAW AND ANALYSIS

General precepts of law

 A trial court has broad discretion in adjudicating issues raised by divorce and partition of the community proceedings. Goines v. Goines, 09-994 (La.App. 5 Cir. 3/9/11); 62 So.3d 193, 198, writ denied, 11-0721 (La.5/20/11); 63 So.3d 984. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Id. When deciding the allocation of an asset or liability, the court shall consider: 1) the nature and source of the asset or liability, 2) the economic condition of each spouse, and 3) any other circumstances the court deems relevant. Id. The trial court’s allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Id., citing Legaux-Barrow v. Barrow, 08-530 (La.App. 5 Cir. 1/27/09); 8 So.3d 87, writ not considered, 09-447 (La.4/13/09); 5 So.3d 152.
17It is well-settled law that an appellate court may not set aside a trial court or jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Hoffman v. Jefferson Parish Hosp. Services Dist. No. 2, 11-776 (La.App. 5 Cir. 4/10/12); 87 So.3d 370, 372, citing Florreich v. Entergy Corp., 09-414 (La.App. 5 Cir. 2/23/10); 32 So.3d 965. However, where one or more trial court legal errors interdict the fact finding process, the manifest error standard is no longer applicable; and if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Id.

Classification of shares of stock

Ms. Carrere alleges the trial court erred by reclassifying 1,090 shares of stock as Mr. Drennan’s separate property, where the community clearly purchased those shares before a purported donation by Mr. Drennan’s mother. Ms. Carrere asserts that, because the classification of property as separate or community is fixed at the time of its acquisition, none of the commu *182 nity property shares purchased from Mrs. Drennan in 1994 could later become Mr. Drennan’s separate property shares in 2000 because Mrs. Drennan forgave the balance of the debt owed. Ms. Carrere claims the 2,500 shares of WCD stock purchased from Mrs. Drennan on September 15, 1994 were and remained community property. As such, Ms. Carrere requests that this Court classify the entirety of Mrs. Drennan’s 2,500 shares of stock as community property.
Mr. Drennan argues the trial court correctly found that the Act of Credit Sale between him and his mother did not determine the character of his stock in the community property partition. Mr. Dren-nan asserts he acquired the 2,500 shares of stock through payments and a donation from Mrs. Drennan. Mr. Drennan contends Mrs. Drennan forgave the balance of the stock purchase loan, and the intention to | sforgive the loan constituted a donation to his separate property. Mr. Drennan avers that he is not claiming that the stock was transferred when the loan was forgiven, but rather that he received a gift from his mother at that time.
In its judgment, the trial court found that a total of 1,882 shares or 45% percent of the 3,910 shares Mr. Drennan acquired were his separate property. The trial court reasoned that the shares were Mr. Drennan’s separate property because he inherited 792 shares from his father and acquired 1,090 shares from a donation by Mrs. Drennan. The trial court further found that shares of stock were acquired from purchases made during the community regime, e.g., 396 shares from Patrick, 1,410 shares from Mrs. Drennan, and 222 shares from Douglas. The trial court concluded that a total of 2,028 shares or 52% of Mr. Drennan’s 3,910 shares of WCD were owned by the community regime.
Community property is made up of property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse, property acquired with community things or with community and separate things, unless classified as separate property under La. C.C. art. 2341. Moise v. Moise, 06-876 (La.App. 5 Cir. 3/13/07); 956 So.2d 9, 11, citing La. C.C. art. 2338. Separate property includes property acquired by the spouse prior to the marriage; property acquired with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; and property acquired individually by gift or inheritance. Brehm v. Brehm, 00-201 (La.App. 5 Cir. 6/27/00); 762 So.2d 1259, 1264, citing La. C.C. art. 2341. The classification of property as separate or community is fixed at the time of its acquisition. Moise, supra, citing Smith v. Smith, 95-0913 (La.App. 1 Cir. 12/20/96); 685 So.2d 649.
UThe trial court’s findings regarding the nature of the property as community or separate are factual determinations subject to manifest error review. Ross v. Ross, 02-2984 (La.10/21/03); 857 So.2d 384, 395; Goines, supra. The Louisiana Civil Code also provides that things in the possession of a spouse during the existence of a regime of acquets and gains are presumed to be community. Id. at 390, citing La. C.C. art. 2340. However, either spouse may rebut this presumption. Id. The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature. Id.
In the case at bar, Mr. Drennan inherited one-eighth or 12.5% of WCD from his father in 1993. Although it was acquired during the community regime, the one-eighth ownership interest inherited by Mr. Drennan was clearly his sepa *183 rate property. However, the remaining 87.5% ownership interest acquired during the community regime by Mr. Drennan does not fit into the separate property classification, in particular the shares acquired from Mrs. Drennan that are at issue.[2]
Mrs. Drennan sold Mr. Drennan the 2,500 shares of stock in WCD on June 15, 1994, which is evidenced by the Act of Credit Sale, pledge, security agreement and promissory note. The shares purchased by Mr. Drennan from Mrs. Dren-nan were reissued in Mr. Drennan’s name in 1994. At the time Mrs. Drennan and Mr. Drennan entered into the act of sale, Mr. Drennan was married to Ms. Carrere; thus, it is presumed that Mr. Drennan incurred a community obligation to acquire community property. See La. C.C. art. 2361. In order to make payments to Mrs. Drennan for the stock he purchased, Mr. Drennan used community funds from the joint checking account he shared with Ms. Carrere.
| ¶ (Although Mr. Drennan claims that Mrs. Drennan donated the 2,500 shares to him in March 2000, we do not find that the shares were actually donated to Mr. Dren-nan. Mrs. Drennan could not donate the shares of stock to Mr. Drennan in 2000 because she had already sold Mr. Drennan those same shares in 1994. The shares of stock for Mrs. Drennan were fully transferred to Mr. Drennan in 1994. Mrs. Drennan simply forgave the remaining debt owed to her for the shares of stock, which was presumed to be a community obligation.
At trial, it was incumbent upon Mr. Drennan to rebut the presumption that the shares of stock acquired from Mrs. Dren-nan were not community property, and he failed to do so. There was no declaration in the act of sale or any other document that the shares acquired by Mr. Drennan were his separate property. Other than his self-serving testimony, the only other evidence submitted by Mr. Drennan was a letter from Mrs. Drennan’s financial consultant indicating that she had forgiven all but $25,000.00 of the outstanding debt through an act of donation. Mr. Drennan did not submit any other evidence to rebut the presumption that the 2,500 shares he acquired are not community property.
Therefore, we find the trial court committed manifest error in classifying part of the 2,500 shares of stock Mr. Drennan acquired from Mrs. Drennan as separate property. We hold that the 2,500 shares acquired by Mr. Drennan from Mrs. Dren-nan are community property and determine that 87.5% of the ownership interest in WCD is community property with the remaining 12.5% interest being Mr. Dren-nan’s separate property. Accordingly, we find Ms. Carrere is entitled to one-half of the community ownership interest (43.75%) in WCD as her share of the community property.
In Award, of funds for the Chestnut St. property[3]
Mr. Drennan alleges the trial court committed manifest error in awarding Ms. Carrere 26% of the funds used to pay the Chestnut St. property loan. Mr. Drennan avers that: a) Ms. Carrere never asserted a reimbursement claim for the $875,000.00 bonus he received; b) he purchased the property after the community terminated with a loan and later paid off the loan with a bonus for his performance after the com *184 munity terminated; c) both of Ms. Car-rere’s experts added back the property’s funds to WCD’s revenues, thereby increasing its value and causing him to pay twice for the same asset-once in the form of the amount he owes for the WCD stock, and a second time in the form of the payment he owes under the court’s ruling on the property’s funds; and d) Ms. Carrere is only entitled to one-third of the post-taxed portion of the $875,000.00 because he paid income taxes on his bonus in 2007.
Ms. Carrere also alleges the trial court erred in awarding her 26% of the funds used to purchase the Chestnut St. property. Ms. Carrere agrees with the trial court’s finding that part of the funds used to purchase the Chestnut St. property came from a community asset, WCD. Ms. Carrere contends Mr. Drennan should be held accountable for his breach of his fiduciary duty owed under La. C.C. art. 2369.3 through the act of depleting WCD funds by giving himself an exorbitant advanced bonus of $875,000.00 disguised as a loan. However, Ms. Carrere asserts that she is entitled to a higher percentage because she actually owned, at least, a 40% interest in WCD at the time the company loaned the money to Mr. Drennan. As a result, Ms. Carrere requests that this Court affirm the underlying ruling that the funds used to purchase the Chestnut St. property were in part community funds, increase the percentage of community funds used to purchase the property to a |12minimum of 80%, and award her one-half of the community funds used to acquire the Chestnut St. property.
In its judgment, the trial court held that the $875,000.00 used to purchase the Chestnut St. property was part separate property and part community property. The trial court determined that 48% of the purchase funds were owned by Mr. Dren-nan as his separate property, and 52% of the funds were owned by the community regime. The trial court found Ms. Carrere was entitled to an award of 50% of $455,000.00, which was determined to be a total award of her share of the community funds used to acquire the Chestnut St. property.
If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. La. C.C. art. 2364.
In this matter, at the time Mr. Drennan purchased the Chestnut St. property, he used money loaned to him by WCD. This is evidenced by the facts that Mr. Drennan signed a promissory note and mortgage in favor of WCD for the sum of $875,000.00, and the terms used in those contracts are clear and unambiguous. Thus, the loaned funds used to buy the Chestnut St. property were part community property (87.5%) and part separate property (12.5%) from WCD at the time the property was purchased. As a result, Ms. Carrere is entitled to the one-half of community property used to purchase the Chestnut St. property. For purposes of classifying the funds used in the purchase, we find that it is inconsequential that Mr. Drennan later repaid his loan with interest through his bonus at the end of the 2007 fiscal year.
| i3Even though the value of the property was added to the valuation reports of two experts, Ms. Carrere is still entitled to reimbursement of one-half of her share of the community funds expended in the purchase of the Chestnut St. property because the loan was a liability of the community regime from the moment it was transacted. Additionally, there was no need for *185 Ms. Carrere to claim reimbursement for Mr. Drennan’s bonus because the home was purchased with part community funds from WCD.[4],[5] Because Ms. Carrere is entitled to reimbursement of her share of the funds loaned to Mr. Drennan to purchase the Chestnut St. property, we find the federal income tax consequences for Mr. Drennan’s bonus are inapplicable to Ms. Carrere’s reimbursement.
Therefore, we affirm the trial court’s ruling that the purchase funds in the amount of $875,000.00 used to acquire the Chestnut St. property were part separate property and part community property. However, we amend the trial court’s ruling on the percentages of community and separate property to reflect that 87.5% of the funds were community property and 12.5% of the funds were Mr. Drennan’s separate property. Accordingly, we find Ms. Car-rere is entitled to reimbursement in the amount of $382,812.50, which represents her one-half community property share (43.75%) of the $875,000.00 used to purchase the Chestnut St. property.
We further find that the trial judge erred in awarding Mr. Drennan $41,568.00 for reimbursement for the restoration of the Chestnut St. property. |14Although the parties stipulated in their November 10, 2010 Joint Detailed Descriptive List that Mr. Drennan would be reimbursed for the amount expended to restore the Chestnut St. property, that stipulation was subject to the condition that the property be deemed community property. While we find, as did the trial court, that the funds used to acquire the property were part separate and part community funds, the property — acquired after the termination of the community regime — is Mr. Drennan’s separate property. Therefore, just as Ms. Carrere is not entitled to any increase in the property’s value since the date of its purchase, she is also not liable for reimbursement to Mr. Drennan for the funds expended to restore his separate property. See Brehm v. Brehm, supra, 762 So.2d at 1266. Therefore, we reverse the trial court’s award of $41,568.00 to Mr. Drennan for the restoration of the Chestnut St. property and amend the Final Judgment of Partition accordingly.

Valuation of WCD

Mr. Drennan alleges the trial court committed manifest error in valuing *186 WCD at $10,000,000.00 by simply averaging divergent expert opinions. In support of his argument, Mr. Drennan asserts: a) one of Ms. Carrere’s valuation experts deemed not credible by the trial court drastically increased his valuation after being fired for providing a realistic valuation, re-hired and then meeting with Ms. Car-rere’s second expert; b) Ms. Carrere caused substantial delay in the proceedings; c) neither of Ms. Carrere’s experts made the mandatory reduction for personal goodwill required by La. R.S. 9:2801.2; d) both of Ms. Carrere’s experts made unrealistic assumptions about the future performance of WCD; and e) one of Ms. Carrere’s experts used the wrong discount rate to drastically inflate her valuation.
In opposition, Ms. Carrere avers the trial court’s ruling was correct because it had the discretion to average the experts’ valuations. Ms. Carrere contends the | ^valuations used by her experts applied reasonable valuation methods that were properly considered by the trial court. By averaging the valuations of all of the experts, Ms. Carrere further contends the judgment accounted for Mr. Drennan’s personal goodwill.
During the trial held on September 7 and 9, 2010, the testimonies and valuation reports of three experts (Mr. Kevin Ney-rey, Ms. Vanessa Claiborne and Ms. J.C. Tuthill) were presented to the trial court regarding the valuation of WCD. Mr. Neyrey and Ms. Tuthill were presented as the experts of Ms. Carrere, and Ms. Claiborne was the expert of Mr. Drennan.
Mr. Neyrey had two valuation reports submitted to the trial court. Mr. Neyrey’s first valuation report concluded the analysis of WCD on March 31, 2008 and set forth two approaches with different values. For the discounted future earnings approach, Mr. Neyrey valued WCD at $5,778,599.00. In his adjusted net book value analysis, Mr. Neyrey valued WCD at $6,147,101.00. Although Mr. Neyrey was Ms. Carrere’s expert, his first valuation report was submitted by Mr. Drennan. In his second report, Mr. Neyrey concluded his analysis of WCD on October 31, 2009. The second report of Mr. Neyrey valued WCD at $11,725,000.00 by using the capitalized historical cash flow method of the income approach. Mr. Neyrey’s second valuation report was submitted as a joint exhibit.
Ms. Claiborne’s valuation report concluded its analysis of WCD on October 31, 2009. Ms. Claiborne’s report valued WCD at $7,330,941.00 by using the weighted average of the values from the market approach, the income approach with the discounted cash flow method and leveraged buyout model, and the asset approach with the net asset value method, while relying heavily on the income and asset approaches. However, at trial, Ms. Claiborne acknowledged there were | ^miscalculations in her valuation and testified WCD was actually valued at $7,800,000.00. Ms. Claiborne’s report was submitted as a joint exhibit.
Ms. Tuthill’s valuation report also concluded its analysis of WCD on October 31, 2009. Ms. Tuthill’s report valued WCD at $14,300,000.00 by using the income approach with the capitalized historical cash flow method. Ms. Tuthill’s valuation report was submitted as a joint exhibit.
In its judgment, the trial court mentioned that it found problems with each of the experts’ valuations. The trial court noted that it calculated the value of WCD by
taking the average of [Mr. Drennan’s] recommendation of $6.8 million (the midpoint between the range of $5.8 million-$7.8 million) and the average of [Ms. Carrere’s] recommendation of $13,012,500.00 (the midpoint between the *187 range of $11,1725,000.00-$14,300,000.00). Thereafter, by taking the mean of both averages of $6.8 million and $18,012,500.00), this Court has determined that the fair market value of WCD as of October 81, 2009, the date agreed to by the parties, is ten million dollars ($10,000,000.00)[.] [Emphasis added].
It is evident from the judgment that the trial court considered Mr. Ney-rey’s first valuation report by the use of the $5,800,000.00 value at Mr. Drennan’s recommendation. However, the parties to this matter agreed that October 31, 2009 would be the ending valuation date for the valuation reports, and all of the experts prepared reports according to that date. Although we acknowledge that the trial court attempted to arrive at an equitable fair market value for WCD, we find the trial court committed a legal error by using Mr. Neyrey’s first valuation report in its calculations in spite of the stipulated valuation date of the parties. Because the trial court committed a legal error and the record before us is complete, we will now conduct a de novo review of the fair market value of WCD. See Hoffman, supra.
|17At trial, Mr. Neyrey, Ms. Claiborne and Ms. Tuthill were accepted as experts, and their valuation reports of WCD were accepted into evidence. After review of each of the valuation reports accepted, we find that each of the reports applied reasonable techniques in the valuations and should be considered in our determination of the fair market value of WCD. However, like the trial court, we also acknowledge that each of the reports could be criticized.
Ms. Claiborne’s report excluded certain years (2006, 2007 and 2008) from the discounted cash flow model; it did not include the receivables owed by the Bridge City and Nine Mile Properties[6]; it does not account for the $875,000.00 loan to Mr. Drennan for the Chestnut St. property; and it upwardly adjusted Mr. Drennan’s salary. Ms. Tuthill’s report used a capitalization rate far lower than the rates of the other two experts; it projected post-Hurricane Katrina profits for future years; and it did not deduct an amount for Mr. Dren-nan’s personal goodwill. Mr. Neyrey’s report projected post-Hurricane Katrina profits for future years; and even though Mr. Neyrey testified that Mr. Drennan is very important to WCD, the report did not deduct an amount for Mr. Drennan’s personal goodwill.
The valuations with an ending valuation date of October 31, 2009 report the following as values of WCD: Ms. Claiborne’s report (as adjusted at trial)— $7,800,000.00; Mr. Neyrey’s report— $11,725,000.00; and Ms. Tuthill’s report— $14,300,000.00. In an effort to determine the most equitable value possible from the reports before us, we calculate the fair market value of WCD by averaging the values determined in each report.[7]’[8] By *188 using that equation, we conclude that the |1sfair market value of WCD is $11,275,000.00. Accordingly, we find that Ms. Carrere is entitled to one-half of the value of the community property share (43.75%) of the fair market value of WCD ($11,275,000.00). Therefore, we award Ms. Carrere $4,932,812.50 as her share of the community property interest in WCD.
DECREE
For the foregoing reasons, we affirm in part, reverse in part, and render an amended Final Judgment of Partition. Each party is to bear his/her own costs for this appeal. Therefore,
IT IS ORDERED, ADJUDGED AND DECREED that the community property partition judgment is rendered as follows:
I.
During the existence of the marriage, the community property regime between Plaintiff/Appellant, Wallace C. Drennan, and Defendant/Appellee, Claudia Carrere, acquired 87.5% of the ownership interest in Wallace C. Drennan, Inc.
II.
Ms. Carrere is entitled to one-half of the 87.5% ownership interest (43.75%) acquired by the community property regime in Wallace C. Drennan, Inc. Ms. Carrere is awarded $4,932,812.50 as her share of the community property interest in WCD.
Jjjin.
Ms. Carrere is entitled to reimbursement in the amount of $382,812.50, which represents her one-half community property interest (43.75%) of the $875,000.00 used to purchase the Chestnut St. property.
IV.
The parties’ assets and liabilities are allocated at the following values, and the respective reimbursement claims are adjudicated as follows:
1. Plaintiff/Appellant, Wallace C. Dren-nan, III shall be and hereby is partitioned the following assets and liabilities as his full share of the community property formerly existing between the parties:

Description Value

a. 87.5% interest deemed as the community property of Wallace C. Drennan, Inc. (12.5% deemed as the separate property of Mr. Drennan). $ 9,865,625.00
b. 87.5% interest deemed as the community property of the funds used to purchase the Chestnut St. property (12.5% deemed as the separate property of Mr. Drennan). $ 765,625.00
c. Nine Mile Properties, Inc. $ 595,311.00
d. JTWW, L.L.C. — Insurance proceeds . $ 10,000.00
e. New Orleans Country Club Stock. $ 18,500.00
*189 57,192.00 f. Morgan Keegan Account # xx-4315 777
111,000.00 g. ING 401K account. 'L/^
12,075.00 h. Cash value of life insurance policies
450.00 i. Remington gun. L/ J
500.00 j. AK 47-AR 17 . ⅜/v
2,000.00 k. Gun safe. L/J
522.00 l. Glock gun. V*
1,000.00 m. AR-15 gun. KJ J
900.00 bon. Steyr Aug gun. L/ J
1,000.00 o. Benelli Supra shotgun. L/J
10,000.00 p. Interest in World Cat boat.
3,750.00 q. Interest in Cajun boat. L/J
8,000.00 r. 1973 Fiat.
2,500.00 s. 2001 Trailblazer. /»^< L/J
$11,465,950.00 TOTAL .
2. Defendant/Appellee, Claudia Car-rere, shall be and hereby is partitioned the following assets and liabilities as her full share of the community property formerly existing between the parties:

Description Value

1504 Homer Street. $795,000.00 es
Whitney Checking account # xx-200. $2,367.00 X!
account # xx-162.
Whitney Savings account. $308.00
Morgan Keegan Account # xx-4323 . $58,566.00 <ú
Morgan Keegan Account # xx-3298 . $15,088.00 ¾-;
Household furnishings.
Air boat. $2,000.00
Mortgage on Homer Street (Liability) . $(284,339.00) .X
Chase Visa debt (Liability). $(1,796.00) -r-⅛
TOTAL. $604,140.00
3. Mr. Drennan shall be and hereby is awarded the following reimbursement claims:

Description Value

3,175.00 a. One-half of the property taxes on the former matrimonial domicile by Mr. Drennan post-termination of the community. 1»<*⅝ K/J
6,087.00 |2ib. One-half of the insurance payments made on the former matrimonial domicile by Mr. Drennan post-termination of the community ⅜⅜ VJ
2,648.00 e. One-half of the maintenance and upkeep of World Cat. /»<■> ■L/J
$11,910.00 TOTAL .
4. Ms. Carrere shall be and hereby is awarded the following reimbursement claims:

Description Value

a. One-half of the repairs to 1504 Homer St. property. $8,445.00
TOTAL. $8,445.00
*190 5. The net of the above reimbursement claims results in a reimbursement owed by Ms. Carrere to Mr. Drennan in the amount of $3,465.00 ($11,910.00-$8,445,00 = $3,465.00).
6. The above allocation of assets results in an equalizing payment of $5,430,905.00 ($11,465,950.00-$604,140.00 = $10,861,810.00 -r 2 = $5,430,905.00) owed by Mr. Drennan to Ms. Carrere.
7. Based upon the above calculations, Mr. Drennan owes Ms. Carrere $5,427,440.00 ($5,430,905.00-$3,465.00 = $5,427,440.00) as the net amount due from the partitioning of the community property-
8. The parties shall list and sell their Mississippi property. They shall evenly divide the sale proceeds.
9. The parties shall evenly divide in kind their U.S. Savings Bonds.
Accordingly, this Court enters judgment allocating the assets in full ownership to each party as set forth above and further enters judgment in favor of Defendant/Ap-pellee, Claudia Carrere, and against Plain-tiffAppellant, Wallace C. Drennan, III, in the amount of $5,427,440.00 (comprised of the awards of | ¾¾$5,430,905.00-$3,465.00), together with legal interest on the amount awarded in the original Final Judgment of Partition ($2,897,747.00) from date of that judgment, September 21, 2011, until paid, and with legal interest on the excess amount awarded in this amended Final Judgment of Partition over the amount awarded in the original Final Judgment of Partition from the date this opinion is rendered until paid.

AFFIRMED IN PART; REVERSED IN PART; JUDGMENT RENDERED

. The remaining 1,832 shares belonged to the treasury.

. It is not disputed by either party that the shares of stock Mr. Drennan acquired from his brothers and the treasury are community property.

. Mr. Drennan’s second assignment of error and Ms. Carrere's first assignment of error are interrelated. As such, we are jointly reviewing the assignments.

. It is noted that Ms. Carrere did list the Chestnut St. property in her sworn descriptive list as a community property asset.

. As we discussed above, on August 1, 2006 Mr. Drennan purchased the Chestnut St. property for $875,000.00 with funds he borrowed from WCD. On August 12, 2006 the parties separated. On September 21, 2006 the trial court issued an interim judgment which restrained both Mr. Drennan and Ms. Carrere from "alienating, encumbering, concealing, or disposing of the community property previously existing between the parties.” Mr. Drennan controlled WCD. Louisiana Civil Code article 2369.3 imposes a duty to preserve and prudently manage a former community enterprise that is under a party’s control in a manner consistent with the mode of use of that property immediately prior to the termination of the community regime. On March 30, 2007, while the partition action was pending, WCD paid Mr. Drennan an $875,000.00 bonus. This bonus was vastly in excess of any previous bonus paid to Mr. Drennan. On that same day Mr. Drennan used this bonus to repay the WCD loan which funded the Chestnut St. property purchase. While the efficacy of the payment of this bonus is questionable at best, the financial consequence of this transaction is mooted by the manner in which the trial court treated the reimbursement to Ms. Carrere of one-half the community funds used to purchase the Chestnut St. property. While we have adjusted the community property portion of the $875,000.00 Chestnut St. loan, we agree with the manner in which the trial court treated the purchase.

. Bridge City and Nine Mile Properties, Inc. are subsidiary companies of WCD.

. La. R.S. 9:2801.2 provides,
In a proceeding to partition the community, the court may include, in the valuation of any community-owned corporate, commercial, or professional business, the goodwill of the business. However, that portion of the goodwill attributable to any personal quality of the spouse awarded the business shall not be included in the valuation of a business.
Ms. Tuthill’s report did not take goodwill into account in the valuation. Mr. Neyrey testified that he did consider Mr. Drennan's goodwill; however, Mr. Neyrey testified, "I don’t think there's much, if any” personal goodwill attributable to WCD. Mr. Drennan testified that most WCD contracts resulted from a public bid process. Goodwill would play no role in the awarding of those contracts. Although *188 Ms. Tuthill and Mr. Neyrey's reports did not deduct for personal goodwill, we agree with Ms. Carrere that averaging the reports along with Ms. Claiborne’s report takes Mr. Dren-nan’s personal goodwill into account and complies with La. R.S. 9:2801.2.

. Courts may reasonably average expert valuations, particularly where the finder of fact has found each of the valuations to have both problems and merit. See Martin v. D & S Marine Service, L.L.C, 2011-1489, p. 3 (La.App. 3 Cir. 4/4/12), 2012 WL 1108903; Cotton v. State Farm Mut. Auto, Ins. Co., 2010-1609, p. 16 (La.App. 1 Cir. 5/6/11), 65 So.3d 213, 224; Daniel v. Daniel, 2009-1743, p. 6 (La.App. 1 Cir. 3/26/10), 2010 WL 1170434; Brown v. City of Madisonville, 2007-2104, p. 19 (La.App. 1 Cir. 11/24/08), 5 So.3d 874, 888.