956 So.2d 9 (2007)
Carol MOISE
v.
Keith Leonard MOISE.
No. 06-CA-876.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 2007.
M. Claire Durio, Simon, Peragine, Smith & Redfearn, New Orleans, Louisiana, for Plaintiff/Appellant.
*10 H. Craig Cabral, Attorney at Law, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiff/appellant, Carol Moise, appeals from a trial court judgment which determined that an L.L.C. was the separate property of her former husband, defendant/appellee, Keith Moise. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Carol Moise ("Ms.Moise"), and defendant, Keith Moise ("Mr.Moise"), were married in Jefferson Parish in February of 1995 and subsequently established domicile there. On July 7, 2003, Ms. Moise filed a petition for divorce, which was granted on June 9, 2004. Ms. Moise and Mr. Moise thereafter partitioned all assets of the community with the exception of The Moise Family, L.L.C. ("the L.L.C."), which Mr. Moise contended was his separate asset. Following a hearing on November 30, 2005 on the Motion for Partition of Community Property, the trial court, in a judgment dated December 1, 2005, ruled that the L.L.C was the separate property of Mr. Moise. From that ruling, Ms. Moise timely filed the present appeal.

LAW AND ANALYSIS
On appeal, Ms. Moise raises two assignments of error: (1) The trial court erred in finding that the L.L.C was the separate property of Mr. Moise, and (2) the trial court erred in finding that Ms. Moise was not a member of the L.L.C.
The record in this case establishes that, on March 17, 1993, prior to his marriage to Ms. Moise, Mr. Moise purchased property in Tangipahoa Parish for a sum of $24,000. The L.L.C. was formed on December 31, 2002, with Mr. Moise and Ms. Moise named as the first managers or members of the L.L.C.[1] On December 31, 2002, Mr. Moise also executed an Assignment of Interest, whereby, in partial consideration of 100 percent interest in the L.L.C, he transferred a partial interest in the Tangipahoa property to the L.L.C. On February 6, 2003, Mr. and Ms. Moise, as "members" of the L.L.C, entered into a Land Lease Agreement with Verizon Wireless for the same parcel that Mr. Moise had previously transferred; the lease called for Verizon to pay the L.L.C. $12,000 annually.[2]
At trial, Ms. Moise presented evidence which she contended established that, not only was the L.L.C. a community asset, but that she was also a member of the entity as well. In support of her claim, she referenced the documents which formed the L.L.C. in which she was listed among "the first managers, or the members" in the initial report. Ms. Moise further relied on the L.L.C.'s tax return for 2003, which lists Mr. and Ms. Moise as 50 percent partners for the purposes of profit sharing, loss sharing, and capital. Ms. Moise testified at trial that she contributed services to the L.L.C., including cutting grass on the Tangipahoa property, payment of corporate fees, including one-half of those paid to the company accountant, meeting with Verizon representatives in pursuit of the lease agreement, and opening *11 the company's bank account. Ms. Moise further introduced the Verizon lease into evidence, in which she was identified as a member of the L.L.C.
We first address Ms. Moise's assignment regarding her classification as a non-member of the L.L.C. While the documents creating the L.L.C. are silent with respect to Ms. Moise's definitive designation as either a member or manager, we find no such ambiguity on the role of Mr. Moise within the L.L.C. The record shows that, on December 31, 2002, Mr. Moise executed an Assignment of Interest, whereby he gave up a certain interest in his separate property in partial consideration of 100 percent interest in the L.L.C. Accordingly, his capital contribution[3] to the L.L.C. would have entitled Mr. Moise to become the only member of the L.L.C., pursuant to the terms of the property assignment.
In spite of the fact that Ms. Moise is designated on the Verizon lease as a member, we do not find that this changes her status in fact. Furthermore, we are not persuaded by Ms. Moise's argument that her equal share of profits from the L.L.C. indicates her status as a member. As the trial court correctly noted, "[t]he rental payments [from Verizon] are natural and civil fruits and hence, are community property" to which Ms. Moise was clearly entitled. We further agree with the trial court's assessment that the duties performed by Ms. Moise for the L.L.C. amount to those of a manager[4] and find this assignment to be without merit.
We next consider Ms. Moise's argument that the trial court erred in finding the L.L.C. to be the separate property of Mr. Moise.
Louisiana law provides clear guidelines to be used in the determination of whether an asset should be deemed community or separate property. As this Court recently noted in McClanahan v. McClanahan:[5]
Community property is made up of property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse, property acquired with community things or with community and separate things, unless classified as separate property under Article 2341. La. C.C. art. 2338. The natural and civil fruits of the separate property of a spouse are community property. La. C.C. art. 2339. Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. La. C.C. art. 2340. The separate property of a spouse is his exclusively.
In addition, the classification of property as separate or community is fixed at the time of its acquisition.[6]
*12 A trial court's findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review.[7]
In finding that the L.L.C. was the separate property of Mr. Moise, the trial court appears to have relied primarily on Mr. Moise's transfer of his separate property in Tangipahoa to the L.L.C.
LSA-C.C. art. 2341 states, in relevant part:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used[.]
(Emphasis added.)
In the present case, the Tangipahoa property, which was clearly the separate asset of Mr. Moise, was given in consideration for 100 percent ownership interest of the L.L.C., which also became his separate asset.[8] As noted by Ms. Moise, we acknowledge that LSA-R.S. 12:1329 provides that an L.L.C. member shall have no interest in a limited liability company property. However, while the status of Mr. Moise's Tangipahoa property made as a capital contribution to the L.L.C. may have changed after he transferred it, the status of Mr. Moise's 100 percent ownership interest in the company acquired by virtue of his separate property remained unchanged from its inception. Furthermore, even had the L.L.C. been a community asset, Mr. Moise still would have been entitled to the return of his capital contribution, his separate property, upon the winding up of the L.L.C. As provided by LSA-R.S. 12:1337, in relevant part:
A. Upon the winding up of a limited liability company, any assets remaining after paying or adequately providing for the payment of all debts and liabilities of the limited liability company, including all costs and expenses of the liquidation and any and all contingent liabilities of which the members or liquidator has knowledge, shall be distributed as follows:
. . . .
(2) Except as provided in the articles of organization or a written operating agreement, to members and former members, first, for the return of their capital contributions, and secondly, respecting their membership interests, in the proportions in which the members share in distributions.
(Emphasis added.)
Accordingly, based upon our review of the record, we cannot say that the trial court was manifestly erroneous in its factual determination that the L.L.C. was the separate property of Mr. Moise for which the community was entitled to reimbursement for expenses. For the foregoing reasons, the judgment of the trial court is affirmed; costs of this appeal are to be borne by the appellant.
AFFIRMED.
NOTES
[1] The L.L.C.'s Initial Report does not specify whether Ms. Moise is a first manager or a member.
[2] The amount of lease payments was made pursuant to an Amendment to Lease Agreement, which was executed between Mr. Moise and a representative of Verizon on August 1, 2003.
[3] As defined by LSA-R.S. 12:1301(A)(3), "`Capital contribution' means anything of value that a person contributes to the limited liability company as a prerequisite for, or in connection with, membership, including cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services."
[4] As defined by LSA-R.S. 12:1301(A)(12) "`Manager' or `managers' means a person or persons designated by the members of a limited liability company to manage the limited liability company as provided in its articles of organization."
[5] 03-1178 (La.App. 5 Cir. 2/23/04), 868 So.2d 844, 847, writ denied, XXXX-XXXX (La.9/3/04), 882 So.2d 609, reconsideration denied, XXXX-XXXX (La.11/8/04), 885 So.2d 1133.
[6] Smith v. Smith, 95-0913 (La.App. 1st Cir.12/20/96), 685 So.2d 649, 651.
[7] Ross v. Ross, 2002-2984 (La.10/21/03), 857 So.2d 384.
[8] Our finding is further supported by the court's holdings in Succession of Sonnier, 208 So.2d 562, 566 (La.App. 3d Cir.1968) and Reeves v. Reeves, 607 So.2d 626 (La.App. 2d Cir.1992), writ denied, 608 So.2d 1010 (La. 1992).