ROBERT A. CHAISSON, Judge.
IsThe instant appeal arises from an amended final judgment from the 24th Judicial District Court on a petition to partition properties in a decade-long succession dispute. Sharon Sylvester (“Sharon”), the decedent’s surviving spouse, appeals the trial court’s ruling which adopts the recommendations of the court-appointed special master regarding the denial of a usu-fruct in favor of Sharon, the classification of certain immovable property as separate or community, the inclusion of out-of-state immovable property in the design of lots for partition, and the calculation of reimbursements owed by Sharon to the estate for use of community funds. For the following reasons, we amend the decision of *252 the trial court in part and, as amended, affirm. We further reverse the decision of the trial court in part and remand this case for proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Anthony Sylvester, Sr. (“Anthony”) died testate on January 9, 2005. At the time of his death, he was survived by his second wife, Sharon, to whom he was |3married from May 19, 2001, until his death. There were no children born of this marriage. Anthony was also survived by four natural born children from his first marriage, Anthony, Jr., Anita, Aaron, and Ashton, who are the sole legatees of his estate according to a notarial testament executed on March 17, 1997. His children have been represented in this succession dispute by their mother, Anthony’s first wife, Joyce M. Sylvester (“Joyce”), from whom he was divorced by judgment of the Civil District Court for the Parish of Orleans dated October 19, 2000.[1]
Anthony was a plumber by .trade and owned a successful, business, Anthony’s Plumbing, LLC: At the. time of. his unexpected death in January of 2005, his estate consisted' of multiple immovable and movable assets including the following contested assets: .
• 2186 Daniels Road, Gretna, Louisiana — a residential property purchased - by Anthony and Sharon on June 8, 2001, and valued at $112,500.
• 1212-1214 South Rampart Street, Square 278, Lot 17 or 18, First Municipal District, Orleans Parish, New Orleans, Louisiana — a lot with a double shotgun style, residence purchased by Anthony on December 12, 2002, during his marriage to Sharon and valued at $105,100.
• 1216-1218 South Rampart Street, Square 278, Lot 17 or 18, First Municipal District, Orleans Parish, New Orleans, Louisiana — a lot purchased by Anthony on January '29, 2003, during his marriage to Sharon and valued at $13,200.
[⅜* 1208-1210 South Rampart Street, ' Square 278, Lot 17 or 18, First Municipal District, Orleans Parish, New Orleans, Louisiana — a lot with improvements purchased for $25,000 by Anthony’s Plumbing, LLC, on December 6, 2002.
• Two adjacent lots located in Pass Christian, Mississippi: Lot 92, Pass Christian, Harrison County, Mississippi, purchased by Anthony and Sharon and valued at $12,500, and Lot 75, Pass Christian, Harrison County, Mississippi, purchased by Anthony and Sharon and valued at $15,000.
• Two timeshare condominiums located near Disney . World in Kissimmee, Florida: Orange Lake Country Club, Week/Unit 47/86745, Kissimmee Flori- , da, purchased by Anthony and Sharon on January 6, 2004, and valued at $8,867, and Orange Lake Country Club, Week/Unit 23/2567, Kissimmee, Florida, purchased by Anthony and Sharon on April 10, 2003, and valued at $11,517.[2]
• Two Hibernia Bank accounts for Anthony’s Plumbing, LLC, with, funds at *253 the time of Anthony’s death: $75,245.99 in a checking account and $116,991.22 in a savings account.
Sharon opened succession proceedings on January 31, 2005, by filing in the 24th Judicial District Court of Jefferson Parish a petition to be appointed administratrix of the estate, a sworn descriptive list of assets, and an affidavit of death, heirship, and domicile. A few months later, in March of 2005, Joyce filed an opposition to Sharon’s application to be appointed ad-ministratrix, a petition for probate of the statutory testament, and Anthony’s last will and testament.[3]
liiThe case remained inactive for many years, and was not taken up again until October of 2009, when Joyce obtained a Judgment of Possession. Subsequently, recognizing that there were procedural defects in obtaining this judgment, Joyce moved to reopen the succession. On March 24, 2010, the parties reached a Consent Judgment whereby the Judgment of Possession was rescinded and Joyce and Sharon were named co-independent ad-ministratrices of the estate.
On November 19, 2010, Joyce, acting on behalf of her children and the estate, filed a petition to partition property held in co-ownership, the judgments on which form the basis for the instant appeal.
Due to the complexity of the legal and factual issues presented in this case, on February 17, 2011, the trial court appointed a special master, Mr. Beau Sagona, under La. R.S. 13:1465, to facilitate its resolution. Pursuant to this Special Master Order (to which the parties consented), the parties met with the special master and provided him with evidence to substantiate their claims. The special master submitted three process verbals to the court which detailed his findings of fact and conclusions of law-together with evidence to support .his conclusions. The third process verbal was subsequently amended.
The first process verbal filed into the record on January -5, .2012, limited the partition demand to the assets of the second community, denied Sharon a usufruct over the property that may have arisen under La. C.C. art. 890, made initial classification of the immovable properties as community or separate, and recommended these properties be partitioned by licitation. The first process verbal also identified a potential reimbursement claim owed by Sharon to the estate for funds withdrawn from the Anthony’s Plumbing, LLC checking and savings accounts, and gave the parties time.to submit additional evidence regarding the issue of reimbursements.
lfiThe second process verbal issued on June 14, 2012, addressed only the issue of reimbursements. At that time, neither party had submitted additional evidence with regard to reimbursement claims. The special master noted 'that while Anthony’s Plumbing, LLC-was separate property of the estate because Anthony organized it prior to his marriage to Sharon, the funds in the Anthony’s Plumbing accounts were presumed community funds.[4] The special master also found that Sharon, who had access-to and signatory authority for these accounts, made, substantial withdrawals from them, and because the accounts had no present value, Sharon owed the estate for its share of the community funds withdrawn. Following this second *254 process verbal, the trial court issued a judgment on August 2, 2012, removing Sharon as a succession representative of the estate, appointing Joyce as sole executrix, and probating Anthony’s will.
On June 20, 2013, the special master submitted a third process verbal addressing classification of community and separate property and reimbursement claims. In it, he proposed partition-in-kind pursuant to La. C.C.P. art. 4606. Under this partition method, the co-owned assets are placed into an active mass, divided into groups of equal value, and then the parties draw lots for them. The third process verbal also recognized certain reimbursements owed by the estate to Sharon for expenses incurred on the estate’s behalf.
This third process verbal was amended on June 28, 2018, to clarify that the net reimbursement claim owed by Sharon to the estate should not be included in the design of the lots for partition. It also corrected the equalizing payment between the lots and redesigned the lots to include the Florida timeshares. Under the amended third process verbal, Lot A includes the Daniels Road property and the two Mississippi lots, plus an equalizing payment to Lot B of $658. Lot B | ./includes 1212 and 1216 South Rampart Street as well as the two Florida timeshares.
The court issued a final judgment on April 30, 2014, which adopted all of the recommendations of the special master’s amended third process verbal and ordered Sharon and Joyce to draw lots. The judgment specified that each party remained obligated to execute any document required to perfect transfer of title in accordance with the partition, and rendered a judgment in favor of the estate against Sharon in the amount of $65,354.17 for all reimbursement claims between the parties other than two claims: reimbursement of any amounts paid to obtain removal of a Sworn Proof of Claim filed by Moliere, Flanagan, and Landry, LLC, and reimbursement of one party’s share of any special master’s charges paid by the other party.[5]
The trial court subsequently amended this final judgment to clarify that the final judgment incorporating the recommendations of the special master’s third process verbal also includes all of the trial court’s prior judgments in the case, such as the partial judgment on the issue of the usu-fruct. The final partition judgment, issued on August 13, 2014, recognized the results of the drawing of lots and awarded Lot A to the estate and Lot B to Sharon.
LAW AND ANALYSIS
Sharon raises four issues for our consideration:
1) The trial court erred in interpreting Anthony’s will to not allow a usufruct for Sharon.
1⅞2) The trial court erred when it adopted the special master’s conclusion classifying immovable property located at 1208-10 Rampart Street as separate property.
3) The trial court erred when it adopted the special master’s conclusion incorporating Florida properties not co-owned into the partition of lots.
4) The trial court erred in its calculation of the net reimbursement owed by Sharon to the estate because the reimbursable expenses owed to Sharon are understated and the application *255 of Civil Code Art. 806 reductions for “value of enjoyment” are misapplied.
We now address each of these issues individually.
USUFRUCT
Under Louisiana Civil Code article 890, the surviving spouse shall have a usu-fruct over the decedent’s share of the community property to the extent that the decedent has not disposed of it by testament. In his first process verbal, the special master concluded that Anthony’s testament leaves all of his property to his children without granting any testamentary usufruct to Sharon, and therefore Sharon has no usufruct over any of the property of Anthony’s succession.[6] The trial court agreed with this conclusion, and issued a partial judgment on March 26, 2018, declaring that Sharon possessed no usufructary rights in Anthony’s estate by virtue of the express terms of Anthony’s last will and testament leaving his entire estate to his four children.[7] We agree with the conclusion of the special master and the trial court’s judgment.
In will contest cases, the factual findings of the trial court are afforded great weight and will not be set aside on appeal absent manifest error. In re Succession of Spitzfaden, 09-212 (La.App. 5 Cir. 12/08/09), 30 So.3d 88, 91. Sharon contends that Anthony’s testament does not dispose of all of his property, but rather only the property he owned at the time he wrote the testament on March 17, 1997, and not any property acquired thereafter or during Sharon and Anthony’s subsequent marriage. In support of this argument, Sharon relies on the’holding set forth in Succession of Gurganus, 206 La. 1012, 20 So.2d 296 (1944); however, the decision in Gurganus is not applicable to the instant case.- In Gurganus, an olo-graphic will, drafted by a widowed testatrix before she remarried, was written in the present tense, and the court found that the unambiguous language clearly showed the testatrix intended to dispose of property she then owned and made no provisions for any residue: “[t]he will does not contain any language which would indicate that the testatrix indicated that the testament would cover future acquired property.” Id. at 297.[8]
In contrast, Anthony does make a residual provision for future acquired property in his notarial testament: ■■
Upon my , death, after all just debts are paid, I leave and bequeath any and all things I may die possessed of to my four (4) children, namely Anthony Sylvester, Aaron Sylvester, Anita Sylvester, and Ashton Sylvester, to be divided equally among them. .
*256 (Emphasis added.)
The clear and unambiguous language of this testament shows that Anthony intended all of the property acquired at the time of his death, even that property acquired after the-• drafting "of the testament in March of 1997, including his share of the property of the second community, to be given to | inhis four children. Accordingly, we find no error in the trial court’s ruling declaring no testamentary usufruct in favor of Sharon, and we affirm that part of the judgment.
CLASSIFICATION OF 1208-10 SOUTH RAMPART STREET
Thrée adjacent properties located in the 1200 block of South Rampart Street were purchased in December of 2002' and January of 2003, while Anthony was married to Sharon. Two of these properties, 1212 South Rampart and 1216 South Rampart, were purchased by Anthony in his own name using community funds. In his first process verbal, the special master identified these two properties as belonging to the second community, a classification neither party now disputes. However, thé property located at 1208-10 South Rampart Street was purchased in the name of Anthony’s Plumbing)'LLC, a sep-árate legal entity organizéd by Anthony on May 8, 2000, prior to his marriage to Sharon and the creation of the second 'community. The special master and the 'trial court concluded that Anthony’s Plumbing, LLC, and all of its assets, including the 1208-10 South Rampart Street property, are separate property and belong entirely to the estate, and are not part of the second community. However, because $25,000 in community funds were presumably used for the purchase price, the estate owes Sharon a reimbursement for her one half share of those funds used by her husband to acquire separate property, or $12,500.
A trial court’s findings regarding the nature of property as community or separate is a factual determination subject to manifest error review. Moise v. Moise, 06-876 (La.App, 5 Cir. 03/13/07), 956 So.2d 9, 12.
Under Louisiana law, property of married persons is generally characterized as either community or separate. La. C.C. art. 2335. The classification of property as either separate or community is fixed at the time of its acquisition. Gay v. Gay, 31-974 (La.App. 2 Cir. 6/16/99), 741 So.2d 149, 153. Community property consists of property acquired during the existence of the matrimonial regime. La. C.C. art. 2338. Likewise, separate property is that property acquired prior to the establishment of the community property regime and is the exclusive property of whichever spouse owned it prior to marriage. La. C.C. art. 2341. This Court has previously held that “assets owned by a corporate entity are property of that entity and are not owned by the shareholders or partners. Such acquisitions by the entity are not community property of the spouses even if the latter are owners of stock or are .partners.” McClanahan v. McClanahan, 03-1178 (La.App. 5 Cir. 02/23/04), 868 So.2d 844, 848.
Sharon admits that she is not contesting the classification of Anthony’s Plumbing, LLC as separate property. She argues instead that the court should look to the source of the funds in order to classify the property as community property, and argues that the fact that Anthony’s Plumbing, LLC appears on the title should be disregarded as mere formality. Essentially, Sharon is asking this,Court to apply a “source of funds” rule to classify the 1208-10 South Rampart Street property. There are limits on how this rule is applied under the Louisiana CM Code. There is no *257 codal article which states that all property acquired with community funds during the matrimonial regime becomes community property. On the contrary, La. C.C. art. 2366 explicitly recognizes that one spouse may use community funds to acquire or improve his own separate property. That article states that if community property has been used for the acquisition, use, improvement, or. henefit of the separate-property of a spouse, the other spouse is-entitled, upon | ^termination of the community, to one half of the amount or value that the community property had at the time it was used. - La. C.C. art. 2366.[9]
An example of the application of this principal can be found in the case of Brehm v. Brehm, 00-201 (La.App. 6 Cir. 06/27/00), 762 So.2d 1259. In that case, upon the termination of the matrimonial, regime, Mrs. Brehm claimed that the matrimonial domicile should be classified as community property because it was constructed using community funds; however, this-Court found that because the lots, on which the domicile was .constructed were separate property of Mr. Brehm, under La. C.C. art. 2366 Mrs. Brehm was entitled only to a claim for reimbursement for one half of the funds used .to build the home. Id.
In support, of her argument, Sharon cites Noil v. Noil, a case distinguishable from the facts at hand. In that case, the trial court considered the classification of a family home as separate property because the purportedly separate funds of Mrs. Noil were used to purchase and remodel the home. The appellate court concluded that the trial court erred.in classifying the. home as separate property of Mrs. Noil because the prize money awarded to her during the marriage should - have been classified as community property.. The case is distinguishable because in that case, both Mr. and Mrs. Noil’s names appeared on the act of sale. There was no corporate entity involved, and the court was not being asked to pierce the corporate veil. Noil v. Noil, 96-2167 (La.App. 1 Cir. 09/19/97), 699 So.2d 1134.
We find no manifest error in the trial court’s classification of the property at 1208-10 South Rampart as Anthony’s separate property,' and we affirm the trial court’s" judgment with regard to that classification, as well as the award of reimbursement to Sharon for her share of community funds used to purchase that property.
| ^CLASSIFICATION OF FLORIDA TIMESHARES
Anthony and Sharon purchased two timeshare condominiums at Orange Lake Country Club in Kissimmee, Florida. Both Sharon and Anthony’s names appear on the deeds to .these out-of-state immovable properties. In his first process verbal, the special master noted that foreign immovable property may be classified as community property under Louisiana .law pursuant to the conflict of laws provision of La. C.C. art. 3526, .in those situations where the property is acquired as to only one spouse;[10] however, in those situations where La. C.C. art. 3525 does not apply because the property was jointly acquired, *258 classification of the property is governed by the law applied by the state where the foreign immovable property is located according to La. C.C. art. 3534.[11] In his third process verbal, the special master concluded that under Florida law, title automatically passed to Sharon upon Anthony’s death, and therefore Sharon is the sole owner of the timeshares and they, are not co-owned properties for the purposes of the partition. However, in his amended third process verbal, the special master cited In re Succession of Duke, 44,377 (La.App. 2 Cir 7/1/09), 16 So.3d 469 and reversed his previous conclusions and determined that the Florida timeshares should be treated as community property for purposes of the partition.[12] Consequently, the Florida timeshares were included in the design of the lots.
Sharon argues that she solely owns the Florida timeshares and the trial court erred when it adopted the special master’s recommendations found in the amended | Mthird process verbal which incorporated the Florida timeshares into the lots for partition.
The classification of property as separate or community is a question of fact to be reviewed under a manifest error standard of review. See Moise, supra. However, questions of law, such as the proper interpretation of a conflict of laws statute, are reviewed under the de novo standard of review. Red Stick Studio Dev’t, L.L.C. v. State of Louisiana, et al., 10-193 (La.01/19/11), 56 So.3d 181, 187; Jefferson Parish Firefighters Ass’n v. Parish of Jefferson, 13-40 (La.App. 6 Cir. 05/23/13), 117 So.3d 246.
We begin with a look at the decision in Duke, a case cited by both parties in support of their respective positions. In Duke, a married couple domiciled in Louisiana jointly purchased immovable property located in Arkansas using .community funds. A succession dispute arose upon the death of one of the spouses, and claims were made for the reimbursement of community funds used to purchase the out-of-state immovable property. The Louisiana Second Circuit found that the trial court, applying La. C.C. art 3525,-had erred in its application of Louisiana’s conflict of law code articles on the issue. The Second Circuit found that La. C.C. art. 3525 applied only to foreign immovable property acquired by one spouse using community funds, rather than the spouses jointly. The Second Circuit then resorted to the residual article of the Louisiana book on conflict of laws, La. C.C. art. 3515, and, using the jurisdiction “most seriously impaired” balancing test of that article, found that Louisiana law applied to the classification of the foreign immovable.[13] The court in Duke also found that the property would be | ^classified as community property under Arkansas law pursuant to that state’s adoption of the Uniform Disposition of Community Property Rights Act.
Like the Second Circuit in Duke, we find La. C.C. art. 3525 does not apply in those situations where foreign immov *259 able • property is jointly acquired by the spouses. La. C.C. art. 3525 is designed to protect the interests of a party whose spouse purchases out-of-state immovable property on his own while using community funds. However, we do not find the residual provision of La. C.C. art. 3515 to be applicable in this case. La. C.C. art. 3515 applies only in those cases where there are no other conflict of law provisions in the code which address the issue. In this instance, since the conflict of law provisions governing marital property are inapplicable, we turn to the conflict of law provisions which govern successions.[14] Specifically, La. C.C. art. 3534 states, “[e]xcept as. otherwise provided in this Title, testate and intestate succession to im-movables situated in another state is governed by the law that would be applied by the courts of that state.”
Under La. C.C. art. 3534, we are required to apply Florida law to the timeshares because those immovable properties are located in that state. In this instance, the joint purchase of property in Florida by a wife and husband creates a tenancy by the entirety, absent a showing by express language within the document of the contrary intent.[15] Bridgeview Bank Grp. v. Callaghan, 84 So.3d 1154 (Fla.Dist.Ct.App.2012). Under the legal regime of a tenancy by the entirety, upon one spouse’s death, title to the immovable property immediately passes to the surviving spouse. Florida also adopted a version of the Uniform Disposition of Community Property Rights Act (“UDCPRA”) which in some instances would 1tf,classify immovable property purchased in Florida with community funds by couples domiciled in another state as community property. However, Florida law specifically excludes -real property held as a tenancy by the entirety from its UD-CPRA provisions. See Fla. Stat. § 732.217. Because title to the timeshare condominiums automatically passed to Sharon upon Anthony’s death under Florida law, they cannot be calculated as part of the active mass of co-owned properties to be divided according to La. C.C.P. art. 4606.
We find that the trial court erred by including the Florida timeshares in the partition procedure. Accordingly, we reverse that portion of the judgment which included the Florida timeshares as part of Lot B in the partition - procedure. We amend the judgment so that the equalizing payment owed by the owner of Lot A to the owner of Lot B is now $21,042, which represents the total value of the now-excluded Florida timeshares, $20,384, plus the prior equalizing payment of $658.
REIMBURSEMENT CLAIMS
The trial court’s amended final judgment includes a money judgment against Sharon in ■ the amount of $65,354.17, which represents the net total reimbursement claim after combining $94,012.49 owed by Sharon to the estate and $28,658.32 owed by the estate to'Sharon.[16] • , .
The $94,012.49 owed, by Sharon to the estate represents one half of the community funds in two Hibernia Bank accounts for Anthony’s Plumbing, LLC. Sharon *260 had access and signatory authority to both of these accounts. Bank account statements show $75,245.99 in the checking account and $116,991.22 in the savings account on January 9, 2005, the day of Anthony’s death. Account statements and check images also show that Sharon wrote two $60,000 checks on the day of Anthony’s death, withdrawing funds from the accounts. No evidence |17was introduced indicating that any funds remained in the accounts. After $4,212.23 in deductions from the checking account for business related expenses authorized by Anthony prior to his death, the special master and the trial court determined that Sharon is accountable to the estate for one. half of the total community funds in those, accounts, or $94,012.49.[17] . :
The $28,658.32 owed by the estate "to Sharon represents one half of the $25,000 in community funds used towards the purchase price of the property at 1208-10 South Rampart Street, or $12,500, as well as $16,158.32 in reimbursement for expenses paid by Sharon on the estate’s behalf.[18] These expenses are outlined in the special master’s third process verbal and include funeral expenses, expenses for substantial improvement or repair to the For-shey[19] and Mississippi properties, and tax preparation.[20]
Sharon also submitted evidence for reimbursement of necessary expenses paid in relation to the Daniels Road, the 1212 South Rampart, and the 1216 South Rampart properties. These expenses included property taxes, lawn care, and painting and supplies. This latter expense was excluded by the special master because the expenses could not be attributed to those properties. The total value of the property tax and law care expenses for the Daniels Road and Rampart Street properties amounts to $31,125.39, one half of which, $15,562.70, the estate would owe Sharon. However, the trial court and the special master determined that [ ^Sharon’s claims for reimbursement for expenses related to these properties is subject to an offset for her enjoyment of the use of these properties under La C.C. art. 806.
La. C.C. art. 806 provides:
A co-ower who on account of the thing held in indivisión has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to them shares.
*261 If the co-owner who incurred the expenses had the enjoyment of the thing held in indivisión, his reimbursement shall be reduced in proportion to the value of the enjoyment.
In determining the value of the enjoyment of use offset, the court relied on evidence provided by Joyce in the form of estimates of the monthly fair market value for the rental of those properties. See Sampognaro v. Sampognaro, 41,664 (La.App. 2 Cir. 02/14/07), 962 So.2d 775, 781. Sharon offered no alternative basis for determining fair market value. The special master and the trial court determined the value of the use of the home on Daniels Road and the double shotgun house at 1212 South Rampart to be $76,000 and $40,000, respectively.[21] The total value of the use of these properties, $115,000, far outweighs Sharon’s claim for reimbursement from the estate, and the special master and the trial court determined that all of Sharon’s claims with regard to these properties were subject to the art, 806 enjoyment of use offset, and therefore were disallowed.
Sharon argues that the application of La. C.C. art. 806 in this situation is misapplied because she never had use of, or occupied, the properties. She |19provided police reports as well as neighbors who testified that the property was unoccupied.[22]
Whether or not Sharon occupied and enjoyed the use of the properties to the exclusion of the other co-owners is a question of fact that we review under the manifest error standard of review. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.02/28/94), 633 So.2d 129, 132. A trial court is granted wide discretion in assess ing the probative value of evidence and is free to accept or reject, in whole or in part, the testimony of any witness. Gregoire v. Louisiana Dept. of Wildlife and Fisheries, 11-321 (La.App. 5 Cir. 04/10/12), 92 So.3d 932, 935. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Id. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Salvant v. State, 05-2126 (La.07/06/06), 935 So.2d 646, 650.
In this case, the trial court heard the testimony of the special master as well as witnesses for both parties and reviewed the evidence showing that Sharon’s children had use of the properties in question or were using the properties for storage. We find no error in the trial court’s findings regarding the reimbursements owed by Sharon to the estate or the estate to Sharon. There are sufficient facts in the *262 record indicating that the properties may have been used by either Sharon or her children to the exclusion of the property co-owners for somej^time since Anthony’s death in 2005. Granting deference to the trial court in its determination of factual questions under the manifest error standard of review, we affirm that part of the judgment ordering Sharon to reimburse the estate the sum of $65,354.17.
DECREE
We reverse that portion of the judgment which included the Florida timeshares as part'of Lot B in the partition procedure, and consequently we amend the judgment so that the equalizing payment owed by the owner of Lot A to the owner of Lot B is now $21,042. In all other respects, the judgment is affirmed.

AFFIRMED IN PART: REVERSED IN PART AND AMENDED

. In addition to being named executrix of the estate in Anthony’s will, Joyce’s capacity as estate representative is supported by power of attorney documents properly executed and filed in the court record. One of the children, Anthony, Jr,, has since revoked the power of , attorney granted to his mother and has chosen to represent himself before the trial court. He has not filed any briefs before us in this matter.

. Values for these and all of the aforementioned immovable • properties are values to which the parties have stipulated.

. Neither party disputes the validity of this testament.

. Community properly includes properly acquired during the exercise of the legal regime through the effort, .skill, or industry of either spouse. La. C.C. art. 2338.

. On October 15, 2009, attorney Raymond Landry of Moliere, Flanagan, and Landry, LLC recorded a Sworn Proof of Claim into Jefferson Parish Mortgage records, Instrument No. 109443309, MOB 4425, folio 696 for unpaid services rendered to Sharon.

. Anthony never revoked this will, nor did'he execute a new will.

. We note that defendant applied for supervisory writs on this issue, which were denied by this court on May 13, 2013. In re Succession of Sylvester, 15-219 (La.App. 5 Cir. 5/13/13) (unpub. Writ disp.)

. The will in Gurganus states: ‘I, Louise G. Gauthier if anything should happen that I would not return. I want my sisters Jane, Sallie, Ida Mai, Julia, Brothers, Tom & Henry to have what I own — my home to be Sold & divided or one to buy the other out & pay them for it. My clothes to go to the ones that can wear them, Sallie & Jane — My piano to Julia & the things she has now. My spread (crocet) to Sallie, my others to be divided, My Diamonds ear rings to the ones that will wear them (with holes in their ears) My big ring Sallie & the small one to Ida Mai. Sallie, Ida Mai, Julia & Jane & Heniy could all live at 1208 & give Tom his rent the Apt he would pse-the rest of the rent to go to keep up the house, That would leave two Apt, one for rent & one for Tom — All other things to be divided. My big trunk to Julia & her to give each sister some contents ” Id.

. We note additionally that in this case there is only a presumption that community funds were used to purchase the property in question. Sharon provided no evidence of the source of the funds used in the purchase.

. La. C.C. art. 3525 states that upon the termination of the community between spouses, either of whom is domiciled in this state, their rights and' obligations with regard to immovables situated in another state acquired during marriage-by either spouse while domiciled in this state, which would be community property if situated in this state, shall be determined in accordance with the law of this state.

. At the time of the first process verbal, neither party had submitted documentation as to how the property was titled; however, Sharon subsequently provided deeds to the timeshares which showed both Anthony and Sharon's names on the titles.

. As with the purchase of 1208-10 South Rampart Street, the special master presumed the Florida timeshares were purchased using community funds, although no evidence was offered by the parties to prove or rebut this presumption.

.La. C.C. art. 3515 states that "[e]xcept as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.”

. See Dian Tooley-Knoblett, Article: A Step by Step Guide to Louisiana’s Choice of Law Provisions on Marital Property, 52 Loy.L.Rev. 759, 792.

., No such expression of contrary intent by Anthony and Sharon appear on the deeds introduced into evidence.

. The $65,'354.17 money judgment is also subject to a $658 plus legal interest credit for equalization payment due from the estate to Sharon as part of the partition of the lots.

. This sum represents the total funds in the checking account ($75,245.99), minus authorized business expenses ($4,212.23), divided in half, or the sum of $35,516.88. To this amount is added one half of the total funds in the savings account ($58,495.61), for a total amount of $94,012.49 owed by-Sharon to the estate. :

. The $16,158.32 represents one half of the amounts paid according to the receipts submitted by Sharon., The special master presumed that these expenses ■ were paid using community funds. Sharon offered no evidence to prove they were paid using her own separate funds.

. The Forshey properties included two immovable properties located on Forshey Street in New Orleans. These properties were sold by consent during the course of the succession proceedings and are not included among the disputed properties except for any reimbursement claims Sharon may have with respect to funds used for their maintenance and repair before their sale.

,Certain other expenses were denied for the following reasons: the document failed to identify the estate property to which it could be attributed: the document establishes a debt or expense. but provides no proof of payment; the document is illegible; the document shows post-community debt incurred, but not the balance due at Anthony’s death;

. These values are the result of one half the estimate of fair market value for monthly rental of the properties times the number of months which Sharon had exclusive use of the properties. Based on the estimate from the real estate agent provided by Joyce, the FMV of monthly rent from the Daniels Road property is $1,500/month and the Rampart Street property is $800/month. These were multiplied by the total time Sharon had control over the properties, an estimated 100 months.

, Sharon also argues that the art. 806 offset should not apply because the expenses of property taxes and lawn care she paid were necessary in her role as independent adminis-tratrix of the estate. While it is true that the administratrix has an affirmative duty to preserve the estate and incur such expenses, this does not negate the fact that Sharon was also a co-owner in possession of the properties. See Symeon C. Symeonides & Nicole Duarte Martin, The New Law of Co-Ownership: a Kommentar, 68 Tul.L.Rev. 69, 128.