JOHNSON, J.
Plaintiff/Appellant, Mark Knobles, appeals a judgment from the 24 th Judicial District Court, Division "A," in favor of Defendant/Appellee, Kay G. Knobles, that classified a portion of his restoration retirement plan as a community asset. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
The relevant facts of this appeal are as follows.
The parties, Mark Knobles and Kay G. Knobles, were married on November 25, 1977. On December 12, 1979, Mark began his employment with the Chevron Corporation (hereinafter referred to as "Chevron") and became eligible to participate in the Chevron Retirement Plan (hereinafter referred to as "CRP") on October 29, 1980. Mark filed a petition for separation from room and board on June 15, 1988, and a petition for divorce was subsequently filed on January 13, 1989. A judgment of divorce dissolving the marriage between Mark and Kay was rendered on March 4, 1992.
On August 29, 1996, Mark filed a petition for judicial partition of the community property. While the judicial partition was pending, Mark voluntarily terminated his employment with Chevron on May 14, 1998; however, his CRP remained intact. The parties agreed to a settlement of the community property. The parties decided that the CRP would be divided pursuant to the formula set forth in Sims v. Sims , 358 So.2d 919, 922 (La. 1978), rehearing granted on other grounds , (La. 1978). A Consent Judgment confirming the settlement was rendered on April 26, 1999. The Consent Judgment specifically stated,
IT IS FURTHER ORDERED ADJUDGE AND DECREED, that in the event that any undisclosed assets are discovered by either party, that said asset will be divided in accordance with the Louisiana Community Property laws. Undiscovered asset means anything that is not covered or is not within the description of those things which have already been described and listed in this Consent Judgment. If any other asset is discovered, that is not included *728 within the definition or descriptions of those which have already been recited heretofore today, that asset would be referred to as an undiscovered asset.
The judgment was later considered by Chevron to be a Qualified Domestic Relations Order (hereinafter referred to as "QDRO").
Mark was rehired by Chevron on January 22, 2007. On that date, Mark was placed in the CRP again and began to accrue additional time of credited service. In a petition to modify the QDRO filed on February 2, 2009, Mark argued that the QDRO needed to be amended, partially due to his reemployment with Chevron. In April of 2009, Mark's compensation exceeded the applicable annual compensation limit for his CRP benefits, and he became eligible to participate in Chevron's Retirement Restoration Plan (hereinafter referred to as "Restoration Plan")-an unqualified benefit plan that was separate from the CRP.
In response to Mark's petition, Kay filed a reconventional demand on March 23, 2009 and asserted an entitlement to a newly discovered supplemental benefit (the Restoration Plan) to Mark's CRP as a community property asset. After numerous motions and exceptions, the merits of the classification of Mark's Restoration Plan was tried by the court on August 6, 2015.
In a judgment rendered on October 13, 2015, the trial court found that the increase in benefits under the Restoration Plan was a community asset due to its use of Mark's years of service during his marriage to Kay to calculate the benefits. The trial court also found that the increase in Mark's benefits under the Restoration Plan fit into the 1999 Consent Judgment's definition of an undiscovered asset and res judicata did not apply to its findings. The trial court further found that Mark failed to allege any special post-community achievement or training that entitled him to the increase of his benefits due to the inclusion of his years of service during the marriage in Chevron's calculations, and no reduction of the community asset was warranted.
Mark filed a motion for new trial from the October 15th judgment, which was denied through a written judgment on January 5, 2016. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Mark alleges the trial court erred by finding his Chevron Corporation Retirement Restoration Plan was an "undiscovered asset" contemplated in the April 26, 1999 Consent Judgment of Partition and that Kay was entitled to a community property interest in it. In his second assignment of error, Mark alleges the Restoration Plan could not be a community asset because it did not exist until July 1, 2002, and he had no entitlement to any interest in the plan until April of 2009. He further alleges in his second assignment of error that, pursuant to the Consent Judgment, Kay is precluded from asserting any other community property claims.[1]
*729 LAW AND ANALYSIS[2]
Restoration Retirement Plan
Mark alleges the trial court erred in determining that the Restoration Plan was an undiscovered asset contemplated by the Consent Judgment. Mark argues that the trial court's classification of the Restoration Plan was erroneous because the court failed to consider when his interest in the plan was acquired. He contends that his interest in the Restoration Plan was acquired in April of 2009, long after the termination of his community regime with Kay, and was not simply a renewal of or an extension of any previous benefit plan. He further contends that his efforts, skills, and industry during the community had absolutely nothing to do with his acquisition of his financial interest in the Restoration Plan over 20 years after the community regime ended; basically, every dollar credited to him in the Restoration Plan is attributable to his earnings after April 2009. Mark then avers that the right to participate in the Restoration Plan was created solely by virtue of him, as a Chevron employee, exceeding the ERISA income threshold under 26 USCS § 401(a)(17) of the Internal Revenue Code (as an employee who never reaches the income threshold would never be enrolled in the Restoration Plan), and neither his years of employment nor credited service in the basic retirement plan have any significance in his participation in the Restoration Plan.
Kay maintains that the trial court's determination was proper because Mark's Restoration Plan is an allowable excess benefit plan that is a supplement to the CRP. She further maintains that the Restoration Plan used Mark's total number of years of credited service, which included the time during their marriage, to calculate his benefit accrual service time and supplemental benefits. She contends that the benefits paid to Mark pursuant to the terms of the Restoration Plan contain community property and are undiscovered assets subject to division under the community property laws.
Community property is made up of property acquired during the existence of the legal regime through the effort, skill and industry of either spouse, property acquired with community things or with community and separate things, unless classified as separate property under La. C.C. art. 2341. Drennan v. Drennan , 12-503 (La. App. 5 Cir. 7/3/13); 121 So.3d 177, 182, writ denied , 13-2200 (La. 11/22/13); 126 So.3d 493, citing Moise v. Moise , 06-876 (La. App. 5 Cir. 3/13/07); 956 So.2d 9, 11. The classification of property as separate or community is fixed at the time of its acquisition. Id. The trial court's findings regarding the nature of the property as community or separate are factual determinations subject to the manifest error standard of review. Id. , citing Ross v. Ross , 02-2984 (La. 10/21/03); 857 So.2d 384, 395.
Because former spouses continue to own former community property together as co-owners until partition, inadequate partition or no partition at all permits the parties to continue as co-owners as to any undivided property. LeBlanc v. LeBlanc , 05-212 (La. App. 3 Cir. 11/02/05); 915 So.2d 966, 969. Principles of co-ownership apply, and former spouses who are co-owners of unpartitioned property may move to partition at any time because there is no time limit *730 as to when a co-owner may move to partition an interest in property. Id. at 969-70. Relying upon the principles of co-ownership explained in Robinson v. Robinson , 99-3097 (La. 1/17/01); 778 So.2d 1105, 1114-15, the Louisiana Third Circuit further stated,
As a general principle, a court partitioning a community asset is required to classify the property as of the date of the termination of the community. In the case of a pension right earned partly during and partly outside of the community, the process of classification begins at the termination of the community and continues until a partition of that asset is effected....The community and separate fractions of the pension cannot be separated and classified definitively until the partition.
Id. at 970.
Louisiana law has clearly held that the portion of retirement benefits from one spouse's employment accrued during the marriage constitutes a community asset. Id.
Consequently, when the community is terminated, the employee's spouse is entitled to be recognized as the owner of the one-half of the value attributable to the pension or deferred compensation right earned during the existence of the community. When the community is terminated, each spouse becomes a fully vested co-owner in indivision of all property of the former community regime, including pension benefits acquired during the community.
Id. , citing Day v. Day , 02-431 (La. App. 1 Cir. 5/28/03); 858 So.2d 483, 491. (Internal citations omitted).
The Louisiana Supreme Court in Sims , supra , expounded:
"When acquired during the existence of a marriage, the right-to-share (in a retirement plan) is a community asset which, at the dissolution of the community, must be so classified even though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time."
A spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, therefore an asset of the community....
[O]ur courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit-sharing plan or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
Id. at 922. (Internal citations omitted).
The supreme court further held that when the benefit payments become due, so as to have a determinate value, the non-employed spouse is entitled to receive the proportion of them attributable to the other spouse's employment during the existence of the community. Id. at 924.
In the instant matter, the trial court found that the Restoration Plan was a community asset anticipated by the Consent Judgment under the definition of "undiscovered asset" and should be divided according to Louisiana community property laws because Chevron calculated Mark's Restoration Plan benefits using all of his *731 years spent working at Chevron, which included the time when he was married to Kay. The trial court also found that, to the extent Mark's benefits under the Restoration Plan increased due to his years of service while married to Kay, the increase in benefits is a community asset. We agree.
In lieu of providing live testimony, the trial court allowed Chevron to submit responses to interrogatories concerning Mark's retirement benefits. According to the responses provided by Chevron, Mark's employment with the company began on December 12, 1979, and he was allowed to become a participant in the CRP on October 29, 1980. Mark's benefit accrual service date began on July 8, 1989, and his vesting and eligibility service date was August 20, 1988. Those dates were used to account for his approximate 18.4 years of service for vesting and eligibility purposes before Mark's employment was terminated on May 14, 1998. The benefit under the Restoration Plan is a supplement to the CRP benefit and is partially based on the total number of years of credited service. Chevron stated that the Restoration Plan is a non-qualified plan that became effective on July 1, 2002 and "was formed from a spin-out on July 1, 2002 of the defined benefit portion of the liabilities of the Chevron Corporation Excess Benefit Plan[,] which had been originally established effective January 1, 1976." Mark was not allowed to participate in the Restoration Plan in May of 1998 because his compensation did not exceed the applicable annual compensation limit under 26 USCS § 401(a)(17) ; however, he was allowed to participate in the Restoration Plan in April of 2009 because his compensation then exceeded the applicable annual compensation limit.
A plain reading of Chevron's responses supports the trial court's determination that a portion of the Restoration Plan is a community asset. Although Mark did not qualify for the Restoration Plan until his compensation from Chevron exceeded the applicable annual compensation limit, well after the community ceased to exist, the benefits Mark will receive under the Restoration Plan are calculated based in part on his credited service years accumulated during the existence of the community with Kay. Mark's years of employment during the marriage factored into his right to receive the increased accrued benefits of the Restoration Plan once it became effective and Mark met the requirements; thus, the community has an interest in the whole of the accrued benefit. See generally , DeMontluzin v. Martinez , 94-1805 (La. App. 4 Cir. 2/23/95); 652 So.2d 71, 76-77, rehearing denied , (La. App. 4 Cir. 4/19/95). Because Mark's years during the marriage were used to determine his eligibility for participation in the Restoration Plan, we find that Kay is entitled to a right-to-share in one-half of the portion of the plan that is a community asset, despite the fact that a determinative value came into existence many years after the dissolution of the marriage. See , Sims , supra . Although the Consent Judgment between the parties anticipated the community property portion of the Restoration Plan as an undiscovered asset, Kay would have ultimately been entitled to that community asset through applicable jurisprudence and community property laws.
Therefore, we do not find the trial court was manifestly erroneous in finding Mark's increase in benefits for the Restoration Plan to be a community asset that should be divided according to Louisiana community property laws. Furthermore, we do not find the trial court was manifestly erroneous in finding that the increase in Mark's benefits under the Restoration Plan fits the definition of an undiscovered asset in the Consent Judgment.
*732 DECREE
Accordingly, the October 13, 2015 judgment of the trial court is affirmed. Mark Knobles is assessed the costs of this appeal.
AFFIRMED

Although Mark raises two arguments in his second assignment of error, he fails to brief the argument regarding the alleged preclusion created by the language of the Consent Judgment. Allegations made in the "assignments of error" section or in the "issues for review" section of a brief that are not argued in the body of the brief are considered abandoned. See , Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4) and Murphy v. 1st Lake Props. , 12-649 (La. App. 5 Cir. 5/23/13); 116 So.3d 964 n. 3, writ dismissed , 13-1728 (La. 10/25/13); 124 So.3d 1088. Therefore, we will only consider the briefed assignment of error in this opinion.

Because assignments of error one and two are interrelated, we are discussing them jointly.